Kent, Ch. J.
delivered the opinion of tne court. The court are of opinion that the previous intention to touch at Halifax did not make it a different voyage, as the termini, as well as the substantial object of the voyage described in the policy, and of the voyage upon which the vessel sailed, were the same. This point is considered as settled in the English law, by the cases of *Carter v. Royal Ex. Ass. Co., 2 Stra. 1249; Thellusson v. Ferguson, Doug. 346, (361 of 3d ed.;) Kewley v. Ryan, 2 H. Bl. 343, and Middlewood v. Blakes, 7 D. &. E. 162. The same question arose in this court in the case of Silva v. Low, decided in October term, 1799. The voyage there, as described in the policy, was from Wilmington, in North Carolina, to Falmouth; but, previous to sailing, the captain declared his intention to touch at New York for seamen ; and one question in the cause (which was twice argued) was, whether the sailing under that declared intent was a distinct voyage ? All the above cases were reviewed and considered, and upon that question the majority of the court were of opinion that it was to be deemed still the same voyage. The second point was decided this very term in the case of Walden v. Le Roy. The only difference in the two cases is, that this is an insurance on the ship, and that was an insurance on the cargo. But this makes no difference in the application of the rule for contribution. The opinion of the court accordingly is, that the plaintiff is entitled to recover, and that the wages and provisions of the crew during the necessary detention, at Dublin, to repair, go into a general average.
LiyiNGSTON, J.
As to the first point, whether this were anything more than an intended deviation, I concur in tha opinion just delivered. Both in England and in this coum try it is well settled that an intention, however strong or well ascertained, to touch at an intermediate port, not mentioned in the pohcy, does not constitute a different voyage, but only an intention to deviate. Were this res integra, doubts might reasonably be entertained ; but it is no reason *277 for shaking tbe authority of several adjudged eases, merely because a better rule might possibly have been adopted. Underwriters, at any rate, cannot complain of a rule which is evidently calculated to diminish their risk, for the moment the separating point is past, which may be at a very small distance from the port of departure, the whole premium is earned, and there is an end of all further peril. But, without further speculation, it is enough to say, that it has been ajdudged more than once, that where the termini of a voyage are the same, an intention to touch at some other place, out of its usual course, does not constitute a deviation or a different voyage.(a)
In the case of Foster v. Wilmer, (2 Str. 1249,) Lord Chief Justice Lee held, that taking in salt to deliver at Falmouth, a port not mentioned in the policy, before the vessel went to Bristol, to which *place she was insured, was only an intention to deviate. So, where the captain had taken a consignment of goods to Amsterdam, and the insurance was from Honduras to London, the underwriters were held liable for a loss before the vessel had *278 ' reached the dividing point. It is true these are decisions at nisi prius, but they have been long practised op, ana have received the sanction of the whole court of common pleas in England, in the case of Kewley v. Ryan and yet this is one of the cases to which .Marshall refers, to induce a belief that the law is different. A vessel insured from Grenada to Liverpool, had sailed for the latter place, but was to touch, as appeared by her clearances, at Cork in her way thither. The whole court, after argument and advising, determined that “ where the termini of the intended voyage were the same, it was to be considered as the same voyage.” Nor is the case of Middlewood v. Blakes, (7 D. & E. 162,) which happened three years after, at all opposed to the one last cited. All the judges, on the contrary, recognize the law as there settled; and Lord Kenyon declares, that he would abandon the opinion. he had given at the trial, if he thought it tended to shake that decision. The whole court, how correctly is an immaterial inquiry at present, determined against the assured, because his captain was positively instructed to take one of three courses, instead of being left at liberty to exercise his judgment, when he canae to the dividing point.
But, were the law doubtful in England, the case of Silva v. Low, (1 Lex Mer. Amer. 324,) decided in this court, would be conclusive. That was a voyage from Wilmington to Falmouth. The captain, previons to sailing, had expressed a determination to touch at Sandy Hook, to obtain seamen from New York. Three of the j udges thought that where the termini of the voyage were the same, the sailing with an intention to touch at a place not in the direct course, was not a deviation, but one and the same, and not a different voyage.
Whether the wages and provisions from the time of bearing away until the brig were in condition to proceed, and the expense of unloading and reloading the cargo, and all others occasioned by that necessity, are to be borne as a general average, is also made a question in this cause ?
From tbe opinion delivered on this point, I dissent. In tbe ease of Walden v. Le Roy, decided this term, my reasons were assigned at large, why an owner or underwriter of goods, ought not to contribute towords a reimbursement of '^expenses of this nature. For the . same reasons, underwriters on vessels can have nothing to do with extra wages and provisions. So it has been settled in England, and the practice both there and in this country is in conformity thereto. As these expenses ■occasion a diminution of freight only, that subject alone must be considered as loser, and its underwriter, if there be any, called on for an indemnity. An insurer of a vessel might as well be applied to for a contribution towards a loss occasioned by an extra consumption of provisions, 'or an extra charge for wages during violent storms or contrary “winds, which had protracted the voyage three or four months beyond the usual period.
We now go much further than in Walden v. Le Roy. We there only said, that wages and provisions expended during a detention to refit, after a storm; should be brought into a general average. But here we determine that “ all other expenses occasioned by this necessity,” are to become a general average including (for the expression is sufficiently broad) materials for repairs, as well as for the hire of carpenters and laborers. An owner of goods will, therefore in future, be bound not only to pay and feed the mariners, but if every expense occasioned by a storm must be paid as a general average, and so we are now determining, he will have to purchase materials and find workmen to repair a ship in which he has no interest. This, if it be intended to go thus far, is introducing an entire new principle into the law merchant, which will be mischievous and unequal in its effects, and which no advocate for the doctrine of general average, excepting Bicard alone, has ever before maintained. Gertain it is, that no owner or underwriter of goods, with us, has-ever yet paid towards the repairs of a vessel injured by storm, but hereafter this as well as every *279 other expense (for there is no exception in this case of anything) must be borne by him in proportion to his interest on board. This innovation in practice, however beneficial to the owners of ships, will not be much relished by the great body of merchants, who, besides paying large sums, for which they have hitherto not deemed themselves liable for real and necessary reparations, will be exposed to many frauds, on the part of those who will now have a right and an interest to repair their vessels at the expense of others.
My opinion is, that the plaintiff is not entitled to recover the wages and provisions of the crew, from the time of bearing *away until the vessel was repaired and in a condition to pursue her voyage, and that none of the expenses occasioned by that necessity are to be borne as a general average.
Upon these principles judgment should be entered only for the sum of 650 dollars ; but the opinion of the courtis, that the verdict is right, and the plaintiff must have judg ment accordingly.
Judgment for the plaintiff according to the verdict.

 S. P. Marine Ins. Co. v. Tucker, 3 Cranch’s Rep. 351. Therefore, where ail insurance is to several ports of destination, and it appear that the vessel sailed with an intention of going only to that lastly named, it is a sailing on the voyage insured. Marsden v. Reid, 3 East, 512. But where a vessel is insured from one port to another, and sails for an intermediate port, in prosecuting the voyage from whence for the port insured to she is taken, tho voyage insured is deemed never to have commenced. Way v. Modigliani, 2 D. & E. 30; Wooldridge v. Boydeil, Doug. 16. So where an insurance is from several ports of departure, to a particular port of destination, and the vessel sail from one of the ports of departure to another, the policy never attaches. Sellar v. M‘Vicar, 1 N. Rep. 23. A clearance for a different port than that to which insured is not proof that the vessel did not sail on the voyage for which underwritten. Talcott v. Mar. Ins. Co., 2 Johns. Rep. 130. But where all the papers show a different voyage than that insured to, and there be not any evidence of sailing on that mentioned in tho policy, though the vessel be taken on tho iter to be pursued in prosecuting both voyages and before she reaches the dividing point, it is not a sailing on the voyage in tlie policy. Wooldridge v. Boydell, ubi sup. See Dennis Willams v. Ludlow, ante, 111.