*380
 
 Welles, J.
 

 In a marine insurance, the assured is understood to warrant that, at the commencement of the voyage, the ship is seaworthy. Among other things necessary to constitute seaworthiness, it is requisite that the ship should have a competent master and officers, according, to the service upon which she is employed. But the law in relation to seaworthiness does not require that the master or any of the subordinate officers or crew should be a citizen or citizens of the United States, nor that the ship itself should be registered in pursuance of the acts of Congress. I am not aware of any law which prohibits a ship-owner from sailing his vessel from any port in the United States to any other in the world, without a register. An insurance upon the vessel or cargo for any such voyage would be valid, if there was no objection but its non-registry. The object of the register is to secure certain advantages to the ship, its owner and company, which would be lost by neglecting it. But there is no law requiring it to be done, and no penalty is incurred by such neglect, excepting the loss of the advantages attendant upon the registry.
 

 It is, nevertheless, of the first importance to the insurer and insured, that the ship be sufficiently officered and manned; and as the insurer cannot control the owner in that respect, the latter undertakes that it shall be done; not indeed In terms, but the law attaches the undertaking, by implication, to the contract of insurance, as an indispensable quality of seaworthiness.
 

 That the ship, when she commences her voyage, shall be put in charge and under the command of a person of competent nautical skill and experience as sailing master, is a condition precedent to any liability of the insurer, growing out of the contract of insurance. It is no part of the contract, however, that the name of the acting master should appear in the register of the ship, in case a register is effected, nor that the actual sailing master should be a citizen of the United States. If the owner chooses to register the ship in the name of a person as master who has no nautical skill or experience, when in fact he never intended he should act as master, or take any part in navigating the ship or any control of the subordinate
 
 *381
 
 officers or mariners, it is a matter with which the insurer has nothing to do; provided always the ship is actually put under the command of á competent master.
 

 The decision of the Superior Court in this case was placed mainly upon the ground that Greene is to be regarded as master of the Albatross upon the voyage in question; and that, although the vessel was in fact navigated by McNeil, yet there was an absence of authority in him to enforce the discipline and secure the obedience to his commands among the subordinate officers and crew which an emergency, involving the safety of the vessel or cargo, .'might render indispensable. Assuming such absence of authority in McNeil, I am not prepared to deny the conclusión to which the learned court has arrived. But I cannot assent to the correctness of the premises from which the conclusion is derived. The owner most assuredly had the right to appoint and employ whomsoever he chose to command the vessel and act as captain or master, in. the full sense which those terms import, and to be at the head of the discipline of the subordinate officers and crew, clothed with all the authority which such position implies.
 

 In this case, the vessel was registered in the name of Greene as master, who was confessedly a mere landsman, with no nautical skill or experience whatever. . The evidence shows 4hat he, in fact, took no part in navigating the vessel, but that he entered upon the voyage, and continued until the ship was lost, in the character of purser and agent of the owner, and absolutely subject to McNeil, the master in fact, in all matters pertaining to the navigation and government of the vessel. He testified that he was employed by the plaintiff, the owner of the Albatross, as purser on board of her on her last trip from New York to Vera Cruz, on which trip she was lost; that his duties were to take charge of the money affairs of the ship, to collect the bills for freight and passage, and to pay bills on account of the ship; that McNeil had charge of the navigation of the ship; that the first he heard of his being in the’ship’s register as captain, was three or four hours before the advertised hour for sailing; that during the voyage he took no part
 
 *382
 
 in the'command or control of the vessel; that McNeil acted as master in the navigation and discipline of the vessel; that, he (Greene) was not known or called captain on board of the vessel; that McNeil was the only person on board that knew that he the witness was named in thp register; that he had written instructions from the plaintiff as to his duties on board the vessel in the shape of a letter from the plaintiff to the witness, which letter was in his trunk on the Albatross when she was lost, and went down with it; that the instructions were that he, the witness, was to take charge of the financial affairs of the ship; and that McNeil was to have the whole charge of the navigation of the ship.
 

 McNeil testified that Greene, from the time they left New York until they struck, did nothing about the ship any more than a passenger; that he was unwell the whole time, and a part of the time confined to his bed; that he, the witness, sailed the vessel under Greene’s direction, that is, wherever Greene told him to take the ship he took it, and remained as long as he told him; that Greene acted on board as the owner or supercargo of the ship; that he had no control, and attempted none, as to the sailing of the ship or its management at sea. It appears also, by the evidence of McNeil, that on the occasion of the disaster he exercised the entire command of the vessel and crew, and that Greene gave no directions, that he was just like any of the passengers, and that he (McNeil) did not consult with him as to what should be done. There is nothing in the evidence to controvert these facts, as testified to by Greene and McNeil; and the same facts are strongly corroborated by other evidence.
 

 The court charged the jury that, if they should find that Greene was not possessed of nautical skill and experience, the defendant was entitled to their verdict, although the plaintiff may have engaged for the voyage and placed on board McNeil, and he was possessed of the requisite skill and experience, and was fully competent for that purpose. This was equivalent, under the evidence, to a direction to the jury to
 
 *383
 
 find for the defendant, as no one pretended or claimed that Greene had any such skill or experience.
 

 The case, then, is one where the owner placed the ship in the charge and command of a competent sailing master, clothed with all the authority incidental to that position, and who accordingly took possession of the ship for the voyage, and exercised all the authority throughout the voyage as long as it lasted as such master: that the ship was registered in the name of another person as master, who possessed no nautical skill or experience, and who never possessed any authority whatever as such master, but who embarked upon the voyage in the character of purser and supercargo, with no authority but such as appertained to such character, and with instructions from the owner to treat and regard the other as the actual master and commander of the ship during the voyage.
 

 The fact that the Albatross was registered in the name of Greene as master, is only to be regarded as evidence tending to prove that he was in fact such master. It is not conclusive of his relation to the ship, but at most only
 
 prima fade,
 
 and liable to be overcome by other evidence. The evidence, taken altogether, shows clearly and indisputably that it was never intended, either by the plaintiff or Greene, that the latter should have or exercise the least particle of authority in the ship as sailing master, or any authority whatsoever, excepting such as was connected with his position of purser and supercargo. Any other hypothesis is simply absurd. Ho one but a madman would entrust the navigation of a vessel, on such a voyage, to such a man as Greene admits himself to have been.
 

 I am constrained, therefore, to the conclusion, that as the ship was put in possession of a competent master, and the voyage prosecuted by him as such, that the fact that the name of another person, who had not the requisite skill or experience for that purpose, was put in the register as master, does not affect the question of seaworthiness of the ship. Suppose, in this case, Greene had not gone on the voyage at all: it is not perceived how that fact could affect the question under consideration. Most 'clearly, the owner might have engaged
 
 *384
 
 another person to go as master;, and that is substantially this case. Greene did not go as master, but did go in another capacity, which, for the purposes of the present question, is the same as if he had not gone at all. Or suppose, when the plaintiff procured the vessel to be registered, he believed Greene to be in all respects competent and qualified to act as master, but afterwards, and before the vessel sailed, discovered he was incompetent, and thereupon McNeil was engaged and went as master: I apprehend it could not be denied, in such case, that the latter should be regarded, to all intents and purposes, the master and commander, as effectually as if his name had been in the register as master.
 

 The policy in this case contemplates the right of the owner to change the master before the voyage should commence. It describes the vessel insured as follows: “ Upon the body, tackle, apparel and other furniture of the good steamer called the Albatross, whereof...............is at present master,
 
 or whoever else shall go for
 
 master, in the said vessel,” &c. Now, McNeil went for master, and he was confessedly competent. If the defendant intended to insist that no one should go as master on the voyage except a citizen of the United States, and his name put in the register of the ship as such, it should have taken the precaution to have had such a provision in the policy.
 

 For the foregoing reasons, the judgment of the Superior Court should be reversed, and a new trial ordered.
 

 Selden, Davies, Clerks, and Wright, Js., concurred.