By the Gourt, Monell, J.
The principal questions raised by the exceptions in this case, are, first, whether the transfer, of the legal title to the vessel to Kane avoided the policy; and, second, whether the trial trip to Elizabethport was such a deviation from the voyage as amounted to an abandonment' of it and terminated the policy.
Having carefully examined the other exceptions taken by the defendants, I do not deem it necessary, in respect to them, to say any thing farther than that none of them, in my judgment, are well taken; >
By the policy it was agreed that it should cover only the original interest subsisting when negotiated,,, and that any change of interest, in whole or in part, should cancel the policy. It appeared on the trial that the policy was issued to the plaintiffs on the 18th of March, 1863, and that the vessel was destroyed on the 3d of May, of the same year. ' Intermediate the date of the policy and the loss, the plaintiffs, by a bill of sale, conveyed the vessel to one Kane. . Such bill of sale is dated the 4th day of April, 1863, and appears to have been recorded on the same day, at the British consulate. The consulate certificate, however, bears date the 6th day of April", 1863: " The consideration for the sale was #35,000;
On the 6th of April, 1863, Kane executed and" delivered to the1 plaintiffs a mortgage of the vessel, to secure the payment of thirty thousand dollars ; and also on the same day a power of attorney authorizing the plaintiffs to take possession and to have" the entire control of the vessel, with power to bargain, sell and convey the same. There was no evidence in regard to the delivery of these several papers, and it does not appear whether they were simultaneous acts. At most, two ¿ays *473 only elapsed between the delivery of the bill of salé and the mortgage.
Independently of the clause in the policy respecting change" of ownership, no change whatever would avoid the policy, provided there was an insurable interest at the time of loss. (Arnould on Ins. 1333. Rhind v. Wilkinson, 2 Taunt. 237. Powles v. Innes, 11 Mees. & Wels. 10.) And the clause in question does not affect the rule, if the change is merely from owner to mortgagee. (Hitchcock v. North Western Ins. Co., 26 N. Y. Rep. 68.) Judge Selden says in that case, (p. 70,) “No transfer of interest will work a forfeiture under that clause, which does not so entirely deprive the assignor of insurable interest as to prevent his recovering on the policy for his own benefit, if that clause was not contained in it. To take away the cause of action in one case, and to render void the policy in the other, equally requires a transfer or termina-" tion of the entire insurable interest. So long as the insured retains such an interest that he may be a sufferer by the loss, the policy remains valid to protect that interest.” In that case there was a sale of the vessel and a mortgage for the purchase money, and the acts were simultaneous, and it was held that the bill of sale and mortgage constituted one transaction, and that the transfer did not terminate the interest of the insured. It is supposed that this case is an authority only when the transfer and the mortgage were executed at the same time. But it will be seen that the principle decided goes much further, and, it seems to me to.cover this case, even assuming that the bill of sale and mortgage were not executed or delivered at the same time. The principle decided is, that the mere transfer of the vessel, without payment by the vendee, and the taking back of a mortgage as a security for the purchase money, is not a change of interest; and the whole transaction was examined with reference to such result. The fact that the security was given at the same instant the transfer was made, is of no importance in giving effect to the transaction; and only important, perhaps, as putting a construction upon it, or as establishing the nature of the change of interest. The only *474 question is, did the interest of the assured in the subject insured, terminate by the transfer ? If the change from owner to mortgagee did not work such a result, it is not necessary that the acts should be simultaneous ; and the fact that there was no other or different change, is the only important one to be ascertained.
That the sale in this case was conditional is sufficiently established by the papers themselves. The consideration of the sale was $35,000, for thirty thousand of which sum the mortgage was given, together with a power of attorney, placing the vessel under the entire control of the mortgagees. Until the delivery of the mortgage, the plaintiffs had an equitable lien for the purchase money, which was of itself an insurable interest, and the subsequent execution of the mortgage continued such interest. It was, therefore, as was said in the case before referred to, (Hitchcock v. North Western Ins. Co.,) owing more to the conditional character of the purchase, than to its instantaneous character, that the interest of the assured was continued.
I am unable to distinguish this case from the one cited, and therefore hold that the interest of the plaintiffs was not terminated by the sale of the vessel to Kane.
Second. Was the trip to Elizabethport a deviation from the voyage ?
The evidence was, that on the sixth of April, the plaintiffs having completed repairs, sent the vessel on a trial trip, to test her engines ; to take in coal, and to test her light and also heavy, draught. She went to Elizabethport and returned in safety to New York, and subsequently left on her voyage and was burnt at sea. The trial trip disclosed, that upon taking on board the necessary quantity of coal for her intended voyage, her exhaust pipes were too deeply submerged.
It is not disputed, that if a loss occurs while the vessel is in the slightest degree deviating from her voyage, the underwriters are not liable. In other words, if during the deviation the loss occurs, the insurers are discharged. (2 Pars. on Mar. Law, 278. Coffin v. Newburyport, 9 Mass. Rep. 436, 449.) *475 Such was the case in Vos v. Robinson, (9 John. 166,) where the vessel was lost while deviating from her voyage. But it by no means follows that although a temporary deviation exonerates the underwriters for loss during such deviation, they are also relieved for a subsequent loss.
A voluntary and unexcused departure, although slight and unimportant, from the course of the voyage, will discharge the underwriters ; but it is otherwise if the departure is excused' by a justifying cause. (Arn. on Ins. 399.) Thus, making a port to refit; to recruit the crew ; stress of weather ; to avoid capture ; and, to succor ships in distress, are instances of justifiable deviation.
It therefore becomes important to inquire, if going to Elizabethport, under the circumstances and for the purposes disclosed, was a deviation, whether such deviation was justifiable.
If it was necessary to examine the first of these questions, it would, I think, be difficult to satisfy any one that there could be a deviation before a vessel started upon her .voyage from the home port. The elementary writers define a deviation to be, any unnecessary or unexcused departure from the usual course or general mode of carrying on the voyage. . Hence, until the voyage commences, there cannot be a deviation from the usual course of the voyage. And although the underwriters are discharged, if the loss occurs, upon a policy “ at and from” a port of departure, while the vessel is away from such port, for any unexcused purpose, yet they will not be absolved, if the vessel returns in safety, and is afterward lost upon her voyage. And one reason is, that the policy covers two risks ; one at the port of departure, and the other from such port upon the voyage to the port of destination. These risks are wholly independent, and distinct from each other. The former insures against the unenumerated perils while the vessel lies in port, and if she is taken from such port for any unjustifiable purpose, and is lost while absent from such port, the obligation of the insurer is at an end. The latter risk is limited to the voyage, and takes effect upon the departure of the vessel. If at that time no loss has occurred, the contract continues binding. It *476 is true the case of Brown v. Taileur. (4 Ad. & Ell. 241,) is opposed to this view. . The policy in that case was “at and from her port of loading,” and it was held- to be a deviation, after having taken in a part of her cargo, for the vessel after-wards to go to another place in the same- bay to take in the rest. The case.draws nice distinctions, and holds, (per Patterson, J.) that if a ship were on a particular quay on a river, and merely removed to another quay, a mile or two off, that would not be a-deviation ; but it is a deviation if she removes to a different town, which might itself be a port of loading. The case, I believe, is not supported by any subsequent case ; for, as far ás I have been able to discover, no case has since arisen in which it became necessary to sustain or question a doctrine so.unique and apparently unjust.
,, It-is not, however, necessary for me to dispute the correctness of the rule laid down in that case. There are principles applicable to this case which relieve it from all difficulty.
In every policy of marine insurance there is an implied warranty that the ship shall be seaworthy for the voyage ; by which is meant, that she shall be in a fit state,, as to repairs, equipments, crew, and all other respects, to encounter the ordinary perils of the voyage. And the courts have held that such seaworthiness is a condition precedent to the underwriters' liability, for any loss incurred in the course of the voyage. (Arn. on Ins. 652. Draper v. Com. Ins. Co., 4 Duer, 234. S. C. 21 N. Y. Rep. 378.) It is the duty of the owner, therefore, to have the ship properly equipped, and sufficiently repaired for the intended voyage, and, as that is a condition precedent, it must, in an action by the. insured to recover a loss, be affirmatively established. Hence, he must show, that she had all necessary stores, (Fontaine v. Phœnix Ins. Co., 10 John. 58 ;) that she was duly manned with a competent crew, (Silva v. Low, 1 John. Cas. 184;) and that she is tight, sound and staunch in her hull, rigging and tackle. (Munroe v. Van Dam, Park. on Ins. 469.)
- In vessels propelled by steam, the implied warranty of seaworthiness extends to,, and requires, that the boilers, engines *477 and all other machinery, are sufficient and suitable ; that the engineer is competent, and that sufficient coal or other fuel is taken on board. Any defect in these particulars will discharge the underwriters.
It being the duty of the assured to put his ship in complete condition for her voyage to avoid the consequences of a breach of the implied warranty of seaworthiness, he has the right to adopt all suitable and usual means to put her in such condition, and to determine, in advance of her sailing, if she is seaworthy.
The trip to Elizabethport was for two purposes, namely, to test the engine, and to ascertain, with a supply of coal on board, the light and heavy draught of the vessel. Neither of such objects could have been obtained, otherwise than by a trial trip, and they were, in my opinion, both necessary and proper, as well for the assured as the underwriters. The result of the trial trip was that when the ship got her supply of coal on board, her exhaust pipes were found to be too deeply submerged, and had to be altered.
If therefore the going to Elizabethport could otherwise be regarded as a deviation, it was sufficiently excused by the necessity of testing the engine and ascertaining the draught of the vessel when loaded.
So far from increasing the risk, which is the theory discharging underwriters in cases of deviation, the risk was positively lessened by the trial trip.
Nor does it make any difference that the trial trip was to Elizabethport. It might have been up the Hudson river, or down to Sandy Hook. It could not be while lying at her wharf, and she had a right to go a sufficient distance in any direction to accomplish the object designed.
I am therefore of opinion that there was no deviation, and that all the exceptions of the defendants should be overruled, and judgment ordered for the plaintiff on the verdict.
McCunn, J. concurred.
*478 Barbour, J.
The defendants claim, among other things, that by the bill of sale to Kane, the original interest, subsisting when the insurance was negotiated, was wholly changed, and the policy thereby became, by own its terms, canceled and void; that the failure of the vessel to sail upon her voyage within a reasonable time, and her going to Elizabethport, and to Jersey City, and each of those things, constituted a deviation, which avoided the policy; that the vessel was unseaworthy when she finally sailed upon her voyage, &c.
There are two degrees or conditions of sea-worthiness spoken of in the books, which are applicable to this case of insurance at, and from, one seaport to another; the one being that which is necessary to keep a vessel afloat and safe while lying in harbor, and the other, such a condition of the ship and her appointments as renders her fit to withstand the waves and tempests of the ocean, and to make her voyage, except for accidents or extraordinary contingencies. The statement of the plaintiffs, upon applying for an insurance, that the vessel was, “in perfect order,” was a representation of a fact in presentí—a fact existing at the time of such application, and at the inception of the risk; and not a representation as to what her condition would be when she should leave port and enter upon her voyage. If, therefore, the vessel was seaworthy for lying, in' harbor at that time, such representation was true, although she was not then in order for a sea voyage. It follows that the insurers had no right to believe, from the use of the words “ in perfect order,” in the representation, that the vessel was in in order to sail, or that the statement, “ warranted to sail in a few days,” was equivalent to the common representation or warranty “ to sail with ordinary dispatch,” or “ usual dispatch.” It is more reasonable to suppose that the relative, and therefore indefinite, phrase, “ a few days,” was understood by both parties to mean such reasonable time as should be necessary to put the vessel in sea-going order, and place her cargo on board; more particularly, as there is evidence in the case tending to prove that the inspectors of the company examined her at the time of the insurance, *479 and must, probably, have known that she was then undergoing repairs.
The proofs show that all the time between the issuing of the policy and the day of sailing, except during her trip to Elizabethport, was necessarily employed in repairing the vessel. Considering the words “ warranted to sail in a few days,” as a mere representation, and not a warranty, the delay in sailing is excused ; (see Smith v. Surridge, 4 Esp. 25; 1 Phillips’ Ins. § 1002;) and I think they must be so considered, under the general rule that an express warranty, to be binding as such, must be written or printed on the face of the policy, or on some paper referred to therein, and made a part thereof, or annexed to and delivered with it. (Pawson v. Watson, Cowper, 785. Bean v. Stupart, 1 Doug. 11. 1 Am. Ins. 577. Murdoch v. Chen. Co. Mu. Ins. Co., 2 N. Y. Rep. 210. Delonguemare v. Tradesmen’s Ins. Co., 2 Hall, 589.) If no policy had been issued, but the insurance had rested upon the application alone, there can be no doubt there would have been a warranty, upon the principle of the charge of Justice Nelson, in Godfrey v. Sun Mu. Ins. Co., (Oct. Term, 1865,) cited by the counsel for the defendants. It is clear, too, that the insurers were authorized by the terms of the application, to write the words in question upon the policy as a warranty ; but having omitted to do so, it appears'to me they thereby waived that right, and must now rely upon the declaration as a representation, merely. The delay in sailing, therefore, was not a deviation, except in so far as the same was occasioned by the trip to Elizabethport, of which I will speak hereafter.
Nor can the trip to Jersey City be considered a deviation. For even while lying at the docks there, the hull of the vessel rested in the waters of the harbor and city of New York ; and she was therefore at New York, within the letter as well as the spirit of the policy. She was not restricted to any particular position there, but had a perfect right to move from one part of the harbor to another, as business or convenience should require; and though damaged by a collision in her removal to Jersey City, that was one of the perils she was *480 insured against, if the policy was then in force, and the necessity for repairing, because of such injury, furnished an excuse, pro tanto, for the delay in her sailing. (See- v. Westmore, 6 Esp. 109, and Bell v. Western Mar. & Fire Ins. Co., 5 Rob. La. R. 423.)
But I am of opinion that the trip to Elizabethport terminated the policy and discharged the insurers from liability,for subsequent- losses. It was a deviation not justified by necessity. If the vessel was in a condition to sail, it was her duty to depart upon the voyage mentioned in the policy; and if not, she should have remained “ at New York,” and completed her preparations. The owners had no right thus to add two or three days to, or even change, the period during which she was covered by the risk, previous to sailing, nor to postpone to that extent the time of her departure upon the voyage insured against.
The trip was, in fact, a complete voyage to another port, intermediate her lying “at New York” and her sailing for Havana. If the policy in this case had covered the risk of the voyage to Havana, only,, and this intermediate voyage had been .made, such policy never would have attached; for the voyage insured against would have been supplanted by another. (Wooldridge v. Boydell, 1 Doug. 16. Forbes v. Church, 3 John. Cas. 159.) Or if so insured for the voyage only, the vessel had, without imperative necessity, gone out' of her way, to Elizabethport, after commencing the same, it would certainly have been a deviation that would have discharged the underwriters from all risks, subsequent to her leaving the route to Havana. (Thellusson v. Ferguson, 1 Doug. 361. Hare v. Travis, 7 B. & Cres. 14. Henshaw v. Marine Ins. Co., 2 Caines, 274. Marine Ins. Co. v. Tucker, 3 Cranch, 357.) And I see no reason for holding that a ship insured at, as well as from, a port of departure, can make an intermediate voyage, when a vessel that is insured simply from one place to another, cannot.
In Brown v. Tayleur, (4 Ad. & Ellis, 241,) the policy was “ at and from her port of lading in North America to Liver *481 pool.” The ship began to take in her cargo at Cocaigne, New Brunswick, and continued to do so for three weeks-; she then sailed to Bucktouche, five to seven miles distant, on the same bay, to complete her loading, arriving there in a few hours. She took no cargo at the latter place, but returned to Cocaigne in safety; and having sailed thence for Liverpool, was lost on the voyage. The sailing for Bucktouche was held to be a fatal deviation.
The case of Vos v. Robinson, (9 John. 192,) was remarkably like 'the one before us. There the insurance was “ at and from Port Plata to New York;” after which, the vessel sailed from the former place for Susua, eighteen miles distant, but within the collection district of Port Plata, for cargo, and was lost on that trip. It was held that the sailing from Port Plata to Susua, instead of to New York, was a deviation which discharged the insurers.
■ In both of the cases last cited, it will be seen, the insurance was “ at and from” a port of departure to a designated port of destination, and in each- it was decided that the sailing upon a very short intermediate voyage prior to entering upon that covered by the risk, was a fatal deviation. The facts are substantially the same here, and I see no reason why those decisions ought not to be followed. "
I think, too, that the Sale and transfer of the vessel' to Kane, on the 4th of April, terminated the risk, and released the insurers from all liability for subsequent losses. *
The- policy expressly declares that it covers “ only the original interest subsisting when negotiated, and that any change of interest, in whole or in part, shall cancel1 the policy in the same ratio.” The sale to Kane was of the entire vessel; and it was not only absolute upon its face, but was designed and intended to be so, as nothing short of an absolute sale would have enabled the owners to accomplish the object which they now declare they had in view. In order to change the nationality of the- vessel and place her under the protection of the British flag, it was necessary that the vendors should wholly divest themselves of all interest, as owners, and vest the entire *482 ownership in a British subject, as they did. No mortgage or lien was taken or reserved at the time of the sale, nor even is there any evidence in the case tending to prove that an equitable lien was then created by an agreement tb execute a mortgage for the purchase money at a future period, or otherwise. Indeed, the mortgage, executed two days after the sale, was not given to secure the purchase money, but the return of money lent to Kane by the plaintiffs. For two entire days, therefore, subsequent to the sale, the plaintiffs were without any interest whatever in the vessel, either legal or equitable; and that deprivation of interest canceled the policy. ' It was then dead, as an obligation, by its own terms ; and it is not possible to suppose that the subsequent execution of a mortgage brought it again into life and action.
The decision in Hitchcock v. The North Westn. Ins. Co., (26 N. Y. Rep. 68,) which is somewhat relied upon by the plaintiffs, is directly against them. In that case, the assured in a policy containing a provision similar to this in regard to a transfer of interest, sold the insured property, and, simultaneously therewith, took a mortgage for part of the purchase money. ■ The court held that an insurable interest in the property continued ; and that, to avoid the policy, under the provision in question, it was necessary that there should be a transfer or termination of the whole insurable interest of the assured in the property ; thus, by strong implication, holding, as I understand it, that where the assured, under such a policy, parts with all his insurable interest, the provision in question attaches, and the policy is no longer operative.
It follows, frorii these conclusions, that the defendants were entitled to a judgment upon the evidence; and that the direction to the jury to render a verdict in favor of the plaintiffs was, consequently, erroneous.
Having arrived at this conclusion, it is not necessary to consider the further questions, raised by the defendants’ counsel, as to the effect of the change in the nationality of the vessel,.or in regard to her seaworthiness when she finally left New York upon her *483 voyage to Havana, or touching the rulings of the court in the admission and exclusion of evidence.
The judgment should be reversed, with costs, .and a new trial granted. -
Judgment rendered for the plaintiff, according to the verdict.