### THE ROLPH.

#### ROLPH NAVIGATION & COAL CO. v. KOHILAS (KAPTEIN et al., Interveners).

(Circuit Court of Appeals, Ninth Circuit. May 19, 1924. Rehearing Denied June 27, 1924.)

#### No. 4160.

1. **Seamen ⊶29(2)—Ship and owner liable to indemnity for injuries to seaman in consequence of unseaworthiness.**

    A ship and her owner are liable to an indemnity for injuries to a seaman in consequence of unseaworthiness.

2. **Seamen ⊶29(2)—Employment of unfit mate constitutes "unseaworthiness" as to seamen.**

    Employment of a mate known to be brutal, inhuman, violent, and cruel constitutes "unseaworthiness" as to seamen under him, and ship and owner are liable for brutal assault.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unseaworthy.]

3. **Seamen ⊶29(2)—Master, in selecting mate, representative of owner.**

    Master of ship, in selecting mate, is representative of owner in respect to obligation to equip ship with competent officer to make her seaworthy.

4. **Seamen ⊶30—Rule that suits for assault or beating shall be in personam does not apply, where mate hired known to be incompetent by reason of brutality.**

    Admiralty rule 15, that suits for assault or beating on high seas shall be in personam, is not applicable where mate hired was known to be incompetent by reason of brutality of disposition.

5. **Judgment ⊶585(2)—Recovery of wages and maintenance did not bar subsequent action for indemnity for assault and battery.**

    Recovery by seamen of wages and maintenance in one proceeding did not bar a subsequent suit to recover an indemnity for assault and battery.

Appeal from the District Court of the United States for the Third Division of the Northern District of California; John S. Partridge, Judge.

Suit in admiralty by Demetrius Kohilas against the barkentine Rolph, the Rolph Navigation & Coal Company, owner, in which John Kaptein, Alfred Seppinen, and Mikel Arnesen intervene as libelants. From a decree for libelant and interveners (293 Fed. 269), the owner appeals. Affirmed.

Sullivan & Sullivan and Theo. J. Roche, of San Francisco, Cal., for appellant.

H. W. Hutton, of San Francisco, Cal., for appellees.

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from a decree against the barkentine Rolph, in favor of libelant Kohilas for $10,000, and of interveners Kaptein for $3,500, and Seppinen and Arnesen for $500 each. The barkentine Rolph and the Rolph Navigation & Coal Company, a corporation, owner, appealed.

The libel was filed in rem for damages for assaults and beatings suffered by Kohilas and interveners at the hands of Frederick Hansen, mate of the Rolph, upon a voyage made in 1921 from Newcastle, New South Wales, to Mejillones, Chile, to end in a port of the Pacific Coast in the United States. Kohilas and interveners were seamen.

It is alleged that the mate, when employed, was known by the master and owner to be a man who frequently assaulted and beat seamen on ships upon which he was employed. The barkentine and her owner denied the right to recover an indemnity against the ship upon the grounds stated, and contended that for injuries, if any, received upon the high seas in the service of the ship, libelant and interveners were entitled to recover only wages, maintenance, and cure, unless the injuries complained of resulted from unseaworthiness of the ship, or became aggravated by the failure of the master to render proper medical treatment.

The District Court found that Hansen was generally reputed among seamen along the Pacific Ocean to be cruel to sailors; that he had served a term of imprisonment for brutal treatment of a seaman; that before the ship sailed the master of the Rolph knew Hansen's reputation; that the voyage of the Rolph commenced in October, 1920, at Vancouver, British Columbia, where Hansen was employed as mate several weeks before the sailing date; that before the voyage commenced Hansen was arrested for a drunken assault upon the stevedores who were engaged in loading the ship; that the first leg of the voyage was from Vancouver to Melbourne, during which time Hansen assaulted a number of sailors, so that upon arrival at Melbourne a majority of the crew went to the American consul and secured their release on the ground of cruelty of the first mate; that at Melbourne a new crew was shipped, but that crew left the ship at Newcastle; that at Newcastle almost an entirely new crew, including libelants, was shipped; that the ship had scarcely cleared Newcastle when Hansen began his brutal treatment of the crew, in that day after day, sometimes several times a day, he struck and beat Kohilas and other seamen, sometimes with his fists and sometimes with belaying pins; that at one time he struck Kohilas across the eyes with a knotted rope, and injured him so that he lost the sight of one eye and was injured in the other; that after his eyes were hurt Kohilas complained to the master, who cursed him and told him to get out; that while his eyes were injured the mate, who was a large, powerful man, kicked Kohilas and compelled him to work; that when Kohilas was unable to obey orders by reason of his injuries the mate tied him to the bilge pump; that as a result of all the beatings and assaults Kohilas was permanently injured, and that interveners were also injured. When the ship reached Mejillones, some of the crew

went to the American consul at Antofagasta. The master went with Hansen to the office of the consul, and by direction of the consul the master paid Hansen his wages. Arrangements were then made to send two of the crew to San Francisco as passengers to testify against Hansen, but after he was paid off Hansen escaped at Antofagasta. Some time thereafter he was apprehended at Seattle, Wash., and was there tried and convicted.

The evidence is in harmony with the conclusions of the District Judge, and as Kohilas has recovered in another proceeding for wages and maintenance, and makes no claim herein for expenses and cure, the principal question presented is whether the vessel can be held liable to an indemnity for injuries in consequence of the hiring and retention of Hansen as mate.

[1] Appellant must, and we gather does, proceed upon the premise that a ship and her owner are liable to an indemnity for injuries to a seaman in consequence of the unseaworthiness of the ship (Chelentis v. Luckenbach, 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171; The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 47 L. Ed. 760), but argues that there is no question of seaworthiness in this case. We recognize that no positive rule of law fixes any definition of seaworthiness which would apply exactly to the condition of facts presented here. Necessarily it is but a relative term. Throughout the books, however, it is generally accepted that, to be seaworthy in respect to cargo, a vessel must not only be strong, stanch, and fit in the hull for the voyage to be undertaken, but she must also be properly equipped, and for that purpose there is a duty upon the owner to provide a master and crew generally competent. Walker v. Maitland, 3 B. & Ald. 170.

In Re Pacific Mail S. S. Co., 130 Fed. 76, 64 C. C. A. 410, 69 L. R. A. 71, this court held that it is the duty of the owner of a ship carrying goods and passengers, not only to provide a seaworthy ship, but also to provide the ship with a crew adequate in number and competent in their duties with reference to all the exigencies of the intended route, and that such a duty rests upon the owner by the general maritime law. In Lord v. G. N. & P. S. Co., 4 Sawy. 292, Fed. Cas. No. 8,506, it was held to be duty of the owner to provide a vessel with a competent master and a competent crew, and to see that the ship when she sails is in all respects seaworthy, and that he is bound to exercise the utmost care in these particulars. In Adams v. Bortz (C. C. A.) 279 Fed. 521, it was said that the basic thought is that the vessel shall be equipped to perform the duty which she owes to the human beings on board her, and the cargo which she carries. Rainey v. N. Y. & P. S. S. Co., 216 Fed. 449, 132 C. C. A. 509, L. R. A. 1916A, 1149. That the ship must have a competent mate is specially laid down by Arnold on Marine Insurance (10th Ed.) pp. 931, 932, and in Holland v. Seven Hundred and Seventy Five Tons of Coal (D. C.) 36 Fed. 785, 787, Judge Jenkins said that a vessel is not seaworthy if there be a failure to provide a proper crew. In Draper v. Commercial Insurance Co., 21 N. Y. 378, the court said:

"Among other things necessary to constitute seaworthiness, it is requisite that the ship should have a competent master and officers, according to the service upon which she is employed."

In The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65, the court referred to the sufficiency of the vessel "in materials, construction, equipment, officers, men and outfit for the trade or service in which it is employed." The Giles Loring (D. C.) 48 Fed. 463, 470; Carver on Sea Insurance, p. 48; Corrado v. Pedersen (D. C.) 249 Fed. 165.

[2] From these and many other decisions, in which the courts have discussed the duty of the shipowner, we conclude that it is but reasonable to say that a ship is not properly equipped for a voyage where the mate is a man known to be of a most brutal and inhuman nature one known to give vent to a wicked disposition by violent, cruel, and uncalled for assaults upon sailors. Such a man may be ever so skilled and competent in navigation and seamanship, nevertheless, he is wholly incompetent to fill a place of authority which calls for the exercise of a sense of natural fairness to men under him.

"In making preparation for the voyage the owners and master are under a duty to provide a vessel tight and stanch and strong, furnished with all necessary tackle, apparel and stores, and manned with a sufficient crew; in one word, seaworthy, for the intended venture, comprehending in that work both voyage and cargo." Maclachlan's Law on Shipping, p. 330; Abbott's Mcht. Ships and Shipping (14th Ed.) p. 491.

[3] It is said that the owner does not select the mate and therefore the ship cannot be held. But it is established that while the master of the ship selects the mate, in so doing he is the representative of the owner in respect to the obligation to equip the ship with a competent officer, to make her seaworthy, and the duty of the owner in such respect is one not to be delegated (Rainey v. N. Y. & P. S. S. Co., supra), or avoided by the plea that the master did not know the ship was unseaworthy when the voyage was commenced. It would follow, therefore, that if the master fails, and by reason of failure the ship is unseaworthy, and injuries are done by willful assaults upon a seaman, the owner may be held liable.

[4] Appellants cite admiralty rule 15, which provides that, in all suits for an assault or beating on the high seas or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only. The rule does not seem to be applicable to a case where, as here, the mate hired was known to be incompetent by reason of brutality of disposition. As already said, the breach on the part of the owner of the Rolph was the failure to supply a properly equipped ship. There was unseaworthiness, and therefore recovery may be had for injuries appellees received in consequence of unseaworthiness. Clifford v. Hunter, M. & M. 103, 3 C. & P. 16. The case of The Osceola, supra, is not controlling, for there the owners supplied an appliance in every respect fit for the purpose for which it was intended, and negligence consisted solely in the order of the master to use the fit appliance at the time of the order. The mate acted properly, but the order of the master was improvident or negligent.

[5] Nor should Kohilas be precluded from recovering because of the fact that in another proceeding for wages and maintenance he recovered. His right to wages, maintenance, and expenses of cure existed under any and all circumstances, unless there was willful misconduct;

but his right to recover an indemnity is a separate matter. The decree for wages cannot be imposed against his demand for damages. The A. Heaton (C. C.) 43 Fed. 592.

The decree is affirmed.