## TOWNSEND et al. v. LORRAINE CORPORATION.

### No. 6076.

Circuit Court of Appeals, Ninth Circuit.

June 2, 1930.

Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, Frank L. A. Graham, and Henry S. Richmond, all of Los Angeles, Cal., for appellants.

Westall & Wallace and Joseph F. Westall, all of Los Angeles, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

This is an appeal from a decree denying a temporary injunction in a suit for patent infringement. The patent involved was considered by this court in Lorraine v. Townsend, 290 F. 54, where the nature and the object of the invention were thus described:

"The essence of the invention is supposed to be the conception, in combination, that the most perfect and quickest results may be obtained by applying pressure to a thin, unbroken film of the mixture slowly flowing over the surface of a solid, such, for example, as the interior surface of the wall of the separator tank. The inventor's theory is that in this way not only will the dry gas be expelled, but the lighter liquid constituents,

such as gasoline, will be retained in solution with the heavier oils. There is no claim to the discovery of the physical law involved; that appears to have been well known. Standard Oil Co. v. Oklahoma [Natural Gas Co.] (C. C. A.) 284 F. 469, 472. As a means the patentee specifies an upright cylindrical tank or chamber within which near the top are mounted cone-shaped spreaders, one below the other, with their peripheries nearly in contact with the walls of the chamber. By a pipe connecting the tank with the well the crude oil or froth is carried into the top of the chamber, and, falling, spreads over the cones, and from them in a thin film or sheet down the walls of the chamber. The gas, rising is discharged through a take-off duct, the oils, including gasoline, through a lower outlet, and the water and sand are drawn off from an opening in the funnel-shaped bottom, all outlets being controlled by appropriate means."

And, in concluding the opinion, we said:

"Our conclusion is that, in the light of the prior art and the patentee's interpretation of his claims in the Patent Office, the claims are to be read only upon apparatus by which substantially the whole body of oil is spread as a film or thin sheet on a backing wall, and is not, in the course of the process of separation, broken up by any means into drops or streamlets; and, if so read, they do not reach the structure exhibited in the drawings of appellant's patent or in the model identified by the bell-shaped discharge nipple. But it is further thought that, so interpreted, they do cover the construction of what is referred to in the record as Towner No. 3 trap, and apparently designated in the decision of the court below as model No. 1. This device, the court found, has—'an inner partition set away from the wall on one side more than one-third the distance of the diameter of the chamber and extending below the oil level. To this partition, at some distance from the top of the chamber, is attached a baffle plate extending downward on an incline of perhaps 45 degrees, and to within one inch and a half to two inches from the wall for the entire segment cut off by the partition. The oil inlet, consisting of a pipe, extends downward to within a short distance of the baffle plate. The plate has two openings, so that the stream of oil is divided and projected upon the baffle plate in two directions, laterally.'

"Possibly, as contended by appellant, the partition is less instead of more than one-third of the distance from the wall; but the

precise location is not highly material. The baffle plate is thought to be the equivalent of the Trumble cone, and spreads approximately the whole body of the oil in an unbroken condition to the adjacent segment of the chamber wall, down which it flows substantially as in the Trumble device."

It will thus be seen that it was necessary to construe the patent very narrowly, in view of the prior art. The court below, 36 F.(2d) 997, 998, in describing the infringing device or devices said:

"In the model which defendant has marketed, the inlet pipe is enlarged after entering the shell of the trap, and prolonged completely around the shell, the opening being against the side of the shell. At the point of opening, the lower wall of the conduit is bent downward and brought to an end, while the inner wall alone is continued some distance further. It is quite plain that the main force of the oil is directed against the inner wall of the shell, and spread upon that wall, the amount of forward spreading being naturally dependent upon the amount of force which propels the stream of fluid. A considerable part of the stream must also drop at and after the point where the lower wall of the conduit is brought to an end."

In other words, in the devices complained of, there are neither baffle plates nor cones, and, to uphold the contention of the appellants, would require us to allow a range of equivalents far beyond that permitted by our former opinion.

The decree is affirmed.