Justice Alito,
with whom The Chief Justice, Justice Scalia, and Justice Kennedy join, dissenting.
In Miles v. Apex Marine Corp., 498 U. S. 19 (1990), this Court provided a workable framework for analyzing the relief available on claims under general maritime law. Today, the Court abruptly changes course. I would apply the analytical framework adopted in Miles, and I therefore respect-folly dissent.
I
In order to understand our decision in Miles, it is necessary to appreciate the nature of the authority that the Miles Court was exercising. The Constitution, by extending the judicial power of the United States to admiralty and maritime cases, impliedly empowered this Court to continue the development of maritime law “in the manner of a common law court.” Exxon Shipping Co. v. Baker, 554 U. S. 471, 489-490 (2008); see also Romero v. International Terminal Operating Co., 358 U. S. 354, 360-361 (1959). In Miles, this Court explained how that authority should be exercised in an era in which statutory law has become dominant.
Miles presented two questions regarding the scope of relief permitted under general maritime law, the first of which was whether damages for loss of society may be recovered on a general maritime law wrongful-death claim. In order to answer this question, the Court looked to the Death on the High Seas Act, 46 U. S. C. § 30301 et seq., and the Jones Act, 46 U. S. C. § 30101 et seq., both of which created new statutory wrongful-death claims. Because the relief available on these statutory claims does not include damages for *426 loss of society, the Court concluded that it should not permit such damages on a wrongful-death claim brought under general maritime law. The Court explained:
“We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance.” 498 U. S., at 27 (emphasis added).
The Court took a similar approach in answering the second question in Miles — whether damages for loss of future income should be available in a general maritime law survival action. The Court noted that “[t]here are indeed strong policy arguments for allowing such recovery” and that “admiralty courts have always shown a special solicitude for the welfare of seamen and their families.” Id., at 35-36. But because the Jones Act survival provision “limits recovery to losses suffered during the decedent’s lifetime,” the Court held that a similar limitation should apply under general maritime law. Id., at 36.
Miles thus instructs that, in exercising our authority to develop general maritime law, we should be guided primarily by the policy choices reflected in statutes creating closely related claims. Endorsing what has been termed a principle of uniformity, Miles teaches that if a form of relief is not available on a statutory claim, we should be reluctant to permit such relief on a similar claim brought under general maritime law.
II
A
The type of maintenance and cure claim that is most likely to include a request for punitive damages is a claim that a seaman suffered personal injury as a result of the willful refusal to provide maintenance and cure. Such a claim may *427 be brought under general maritime law. See Cortes v. Baltimore Insular Line, Inc., 287 U. S. 367, 374 (1932) (recognizing that a seaman may sue under general maritime law to recover for personal injury resulting from the denial of maintenance and cure). And a similar claim may also be maintained under the Jones Act. See, e. g., Guevara v. Maritime Overseas Corp., 59 F. 3d 1496, 1499-1500 (CA5 1995) (en banc); G. Gilmore & C. Black, Law of Admiralty § 6-13, p. 311 (2d ed. 1975). To be sure, a seaman asserting a Jones Act claim must show that his employer was negligent, ibid., while a seaman proceeding under general maritime law may recover compensatory damages without establishing fault, id., at 310. But because the prevailing rule in American courts does not permit punitive damages without a showing of fault, see Exxon Shipping, supra, at 493, it appears that any personal injury maintenance and cure claim in which punitive damages might be awarded could be brought equally under either general maritime law or the Jones Act. The Miles uniformity therefore weighs strongly in favor of a rule that applies uniformly under general maritime law and the Jones Act. I therefore turn to the question whether punitive damages may be awarded under the Jones Act.
B
Enacted in 1920, the Jones Act, 46 U. S. C. §§30104-30105(b), makes applicable to seamen the substantive recovery provisions of the Federal Employers’ Liability Act (FELA), 45 U. S. C. § 51 et seq., which became law in 1908. FELA, in turn, “recites only that employers shall be liable in ‘damages’ for the injury or death of one protected under the Act.” Miles, supra, at 32 (citing 45 U. S. C. § 51).
Prior to the enactment of the Jones Act, however, this Court had decided several cases that explored the damages allowed under FELA. In Michigan Central R. Co. v. Vreeland, 227 U. S. 59 (1913), the Court dealt primarily with the damages that may be recovered under FELA’s wrongful- *428 death provision, but the Court also discussed the damages available in the case of injury. The Court noted that if the worker in that case had not died from his injuries, “he might have recovered such damages as would have compensated him for his expense, loss of time, suffering and diminished earning power.” Id., at 65. Two years later, in St. Louis, I. M. & S. R. Co. v. Craft, 237 U.S. 648 (1915), the Court reiterated that an injured worker may recover only compensatory damages. Addressing the damages available to a party bringing a survival claim, the Court explained that the party may recover only those damages that had accrued to the worker at the time of his death and was thus limited to “such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived.” Id., at 658. See also ibid, (damages “confined to the [worker’s] personal loss and suffering before he died”); Miller v. American President Lines, Ltd., 989 F. 2d 1450, 1457 (CA6), cert. denied, 510 U. S. 915 (1993) (“It has been the unanimous judgment of the courts since before the enactment of the Jones Act that punitive damages are not recoverable under [FELA]”).
When Congress incorporated FELA unaltered into the Jones Act, Congress must have intended to incorporate FELA’s limitation on damages as well. Miles, 498 U. S., at 32. “We assume that Congress is aware of existing law when it passes legislation.” Ibid, (citing Cannon v. University of Chicago, 441 U. S. 677, 696-697 (1979)). It is therefore reasonable to assume that only compensatory damages may be recovered under the Jones Act. See Pacific S. S. Co. v. Peterson, 278 U. S. 130, 136-139 (1928) (under the Jones Act, a seaman may “recover compensatory damages for injuries caused by the negligence”). And under Miles’ reasoning — at least in the absence of some exceptionally strong countervailing considerations — the rule should be the same when a seaman sues under general maritime law for personal injury resulting from the denial of maintenance and cure.
*429 III
In reaching the opposite conclusion, the Court reasons: Punitive damages were available on maintenance and cure claims prior to the enactment of the Jones Act and that the Jones Act was not intended to trim the relief available on such general maritime law claims. This reasoning is flawed.
A
First, the Court proceeds as if the question here were whether the Jones Act was meant to preclude general maritime law claims and remedies. See ante, at 415 (Jones Act does not “overtur [n]” or “eliminate pre-existing remedies available to seamen”); ante, at 417 (Jones Act “preserves common-law causes of action”); ante, at 421 (Miles does not “preclud[e]” all claims and remedies beyond that made available under the Jones Act). Miles explicitly rejected that argument. See 498 U. S., at 29. But just because the Jones Act was not meant to preclude general maritime claims or remedies, it does not follow that the Jones Act was meant to stop the development of general maritime law by the courts. The Jones Act is significant because it created a statutory claim that is indistinguishable for present purposes from a general maritime law maintenance and cure claim based on personal injury and because this statutory claim does not permit the recovery of punitive damages. “Congress, in the exercise of its legislative powers, is free to say ‘this much and no more,’ ” and “an admiralty court should look primarily to these legislative enactments for policy guidance.” Miles, supra, at 24, 27. This policy embodied in the Jones Act thus constitutes a powerful argument in favor of the development of a similar rule under general maritime law.
B
That brings me to the Court’s claim that the availability of punitive damages was established before the Jones Act was passed. If punitive damages were a widely recognized *430 and regularly employed feature of maintenance and cure claims during the pre-Jones Act era, I would not rule out the possibility that this history might be sufficient to outweigh the Miles uniformity principle. But a search for cases in which punitive damages were awarded for the willful denial of maintenance and cure — in an era when seamen were often treated with shocking callousness — yields very little. Although American courts have entertained maintenance and cure suits since the early 19th century, the Court points to only two reported cases — The City of Carlisle, 39 F. 807 (DC Ore. 1889), and The Troop, 118 F. 769 (DC Wash. 1902) — that, as the Court carefully puts it, “appear to contain at least some punitive element.” Ante, at 414.
The Court’s choice of words is well advised, for it is not even clear that punitive damages were recovered in these two obscure cases. In The City of Carlisle, a 16-year-old apprentice suffered a fractured skull. The captain refused to put ashore. Given little care, the apprentice spent the next six or seven weeks in his bunk, wracked with pain, and was then compelled to work 12 hours a day for the remaining three months of the voyage. Upon landing, the captain made no arrangements for care and did not pay for the apprentice’s brain surgery. The apprentice received an award of $1,000; that may include some “punitive element,” but it seems likely that much if not all of that sum represented compensation for the apprentice’s months of agony and the lingering effects of his injury.
The Court’s second case, The Troop, supra, involved similarly brutal treatment. The seaman fell from a mast and fractured an arm and a leg while his ship was six miles from its port of departure. Refusing to return to port, the captain subjected the seaman to maltreatment for the remainder of the 36-day voyage. As a result, he was required to undergo painful surgery, and his injuries permanently prevented him from returning to work as a mariner. He received an undifferentiated award of $4,000, and while the *431 court was sharply critical of the captain’s conduct, it is far from clear that the award did not consist entirely of compensatory damages for medical expenses, lost future income, and pain and suffering.
In addition to the two cases cited by the Court, respondent and an amicus claim that punitive damages were awarded in a few additional cases. See Brief for Respondent 13; Brief for American Association for Justice as Amicus Curiae 10-11. Of these cases, The Margharita, 140 F. 820 (CA5 1905), is perhaps the most supportive. There, the court explained that its award of $1,500 would not only “compensate the seaman for his unnecessary and unmerited suffering” but would “emphasize the importance of humane and correct judgment under the circumstances on the part of the master.” Id., at 828. While the court’s reference to the message that the award embodied suggests that the award was in part punitive, it is also possible that the reference simply represented a restatement of one of the traditional rationales for maintenance and cure, i. e., that it served the economic interests of shipowners and the general interests of the country by making service as a seaman more attractive. See Harden v. Gordon, 11 F. Cas. 480, 485 (No. 6,047) (CC Me. 1823).
The remaining cases contain harsh criticism of the seamen’s treatment but do not identify any portion of the award as punitive. See The Rolph, 293 F. 269 (ND Cal. 1923), aff’d, 299 F. 52 (CA9 1924) (undifferentiated award of $10,000 for a seaman rendered blind in both eyes); Tomlinson v. Hewett, 24 F. Cas. 29, 32 (No. 14,087) (DC Cal. 1872).
In sum, the search for maintenance and cure cases in which punitive damages were awarded yields strikingly slim results. The cases found are insufficient in number, clarity, and prominence to justify departure from the Miles uniformity principle.
IV
There is one remaining question in this case, namely, whether punitive damages are permitted when a seaman as *432 serts a general maritime law maintenance and cure claim that is not based on personal injury. In Cortes, 287 U. S., at 371, the Court explained that the duty to furnish maintenance and cure is “one annexed to the employment. . . . Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident.” The duty is thus essentially quasi-contractual, and therefore, in those instances in which the seaman does not suffer personal injury, recovery should be governed by the law of quasi-contract. See Restatement (Second) of Contracts § 4, Comment b, p. 15, §12, Comment ƒ, p. 32 (1979); Restatement of Restitution §§ 113-114 (1936); 1 D. Dobbs, Law of Remedies §4.2(3), p. 580 (2d ed. 1993). Thus, an award of punitive damages is not appropriate. See also Guevara, 59 F. 3d, at 1513.
* * *
For these reasons, I would hold that punitive damages are not available in a case such as this, and I would therefore reverse the decision of the Court of Appeals.