Appeal allowed to United States Supreme Court June 13, 1925.

---

## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION v. O'SHEA.

(Court of Appeals of District of Columbia. Submitted December 3, 1924. Decided April 6, 1925.)

No. 4107.

1. **United States ⬅⮕52½, New, vol. 19A Key-No. Series—Admiralty law, adopting by reference provisions of Employers' Liability Act, applies as well to vessel controlled by Emergency Fleet Corporation as to privately owned vessels.**

Admiralty Law Act May 4, 1915, § 20, as amended by Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), adopting by reference provisions of Employers' Liability Act April 22, 1908, and amendments (Comp. St. §§ 8657–8665, 1010), for benefit of seamen injured in course of employment, applies as well to vessels owned by United States Shipping Board Emergency Fleet Corporation as to merchant vessels privately owned.

2. **United States ⬅⮕52½, New, vol. 19A Key-No. Series—Emergency Fleet Corporation held liable as operator of vessel which was in fact in control and management of agent.**

United States Shipping Board Emergency Fleet Corporation held liable to injured seaman, under Act March 4, 1915, § 20, as amended by Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), as operator of vessel, though at time of accident vessel was in fact operated and managed by shipping company as agent for Fleet Corporation.

3. **United States ⬅⮕52½, New, vol. 19A Key-No. Series—Emergency Fleet Corporation cannot escape liability to injured seaman on ground that it is public agent, not liable to suit.**

United States Shipping Board Emergency Fleet Corporation cannot escape liability to injured seaman, under Act March 4, 1915, § 20, as amended by Act June 5, 1920, § 33 (Comp. St. Ann. Supp. 1923, § 8337a), on theory that it was acting as public agent, and as such not liable to suit.

4. **Seamen ⬅⮕29(5)—Evidence held to show negligence of officers of vessel in unnecessarily exposing seaman to danger.**

Evidence held to show negligence of officers of vessel, operated by Emergency Fleet Corporation, in requiring seaman to unnecessarily expose himself to danger in effort to replace fuel oil in tanks from which it had escaped during rough weather.

5. **Seamen ⬅⮕29(4) — Seaman, undertaking dangerous work at direction of officer, held not chargeable with assumption of risk.**

Seaman, who under pain of penalties undertook dangerous and unnecessary work at direction of officers of vessel, held not chargeable with assumption of risk.

Appeal from Circuit Court of District of Columbia.

Action by Jeremiah O'Shea against the United States Shipping Board Emergency Fleet Corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

F. D. McKenney, J. S. Flannery, and G. B. Craighill, all of Washington, D. C., for appellant.

Willis Crane, H. L. Lohnes, and F. B. Dow, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. Jeremiah O'Shea, as plaintiff, secured a verdict in the lower court against the United States Shipping Board Emergency Fleet Corporation in the sum of $25,000, as damages for personal injuries sustained by him on January 7, 1921, while employed as a boatswain on the steamship Dungannon, alleged to have been operated at the time by the defendant corporation. After the filing of a remittitur, the lower court entered judgment upon the verdict in the sum of $15,000, whereupon the defendant appealed.

The testimony sufficiently tends to prove the following facts: That the Dungannon was owned by the United States, and was operated as a merchant vessel by the Emergency Fleet Corporation, and that the plaintiff, an experienced seaman, was employed at the time as boatswain upon the ship; that the vessel was an oil-burning ship, and was equipped with a storage tank for fuel oil in front of the cargo space; that while on the high seas, bound for the port of New Orleans, the plaintiff discovered that the cargo space was flooded with several hundred barrels of fuel oil, which had escaped from the tank through the manholes, the oil being about four feet deep at the rear of the cargo space, the depth diminishing forward; that the plaintiff reported this to the chief mate, whereupon, during the next five days, although the weather was cold and stormy and the sea rough, the captain ordered and compelled the plaintiff and seamen to work in the hold trying to get the oil back through

the manholes into the tank; that they rigged up a half barrel on wheels and attempted to dip the oil into it with pails, and then roll it to the manholes and empty the oil into the tank, first rigging up four life lines for support between the stanchions; that the deck of the hold was slippery and the air filled with fumes, the ventilation being bad because of the partly closed hatches, made necessary by the weather, the oil moving with the roll of the ship, and they were compelled to work in underclothes and with bare feet, and to bathe in gasoline twice a day to get the oil off; that because of these conditions the plaintiff and men objected and protested to the chief mate that it was "a dangerous job for any man to try to save his life down there," and that "it was no place for men to work, almost naked, as it was getting cold," but the mate replied that he could not help it, as the master wanted the oil out of the cargo space before the vessel reached New Orleans; that the men complained to the captain, who in the hearing of the plaintiff read the regulations to them, and said that he would land them on the Bermuda Islands within an hour, if they did not go back to work; that the plaintiff also told the captain that "it was impossible for any man to work down there without being killed from gas or killed by slipping as the vessel was beginning to roll"; that on the fifth day the weather was worse, the ventilators being shut to keep the sea out, whereupon the plaintiff again complained to the captain that conditions were desperate, and after a time he was ordered to put the plates on the manholes and stop work; that, while attempting to put the plates in position, the plaintiff was thrown violently upon the iron coaming surrounding one of the manholes, thereby suffering severe and permanent physical injuries. Before attempting to fasten the plates upon the manholes, the plaintiff told the mate that he did not think he could put them on, "because, if he let go the life line, he would get killed," and "that the oil was far down in the tank, so that it was not necessary to put the plates on, and it was a dangerous job," to which the mate replied that he knew it, but the captain wanted them on.

The plaintiff's action was brought under section 20 of the Act of March 4, 1915, as amended by section 33 of the Act of June 5, 1920, 41 Stat. 1007 (Comp. St. Ann. Supp. 1923, § 8337a), which provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for dam-

ages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." Prior to that enactment the admiralty law of this country did not afford such a right or remedy for seamen. The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760; The Iroquois, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955; Southern Pacific Company v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Chelentis v. Luckenback S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; State of Washington v. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646. The terms of the cited act, however, extended the admiralty law as above stated, adopting by reference the provisions of the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, and its amendments (Comp. St. §§ 8657–8665, 1010), for the benefit of seamen who suffer personal injury in the course of their employment. The Employers' Liability Act permits of the recovery of damages from common carriers, by any person suffering injury while employed by such carriers, for such injury as results in whole or in part from the negligence of any of the officers of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, and other equipment.

The appellant presents various contentions in support of its appeal. The first one challenges the constitutionality of section 33 of the Act of June 5, 1920, supra; but since the brief was written the Supreme Court has held the enactment to be constitutional. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748.

[1, 2] The appellant next contends that the foregoing enactment, if constitutional, applies only to merchant vessels not owned by the United States; but we find no warrant in the letter or spirit of the act for such a limitation when the vessel is operated by others as in this case. The appellant also denies that the Dungannon was in fact operated by the Fleet Corporation at the time of the accident, claiming that it was then managed, controlled, and operated by the Columbus Shipping Company. This claim cannot be sustained; for the evidence discloses that the latter company was merely acting as the agent of the Fleet Corpora-

tion in the management and operation of the vessel. Cox v. Lykes Bros., 237 N. Y. 376, 143 N. E. 226; Shea v. U. S. S. B. Emergency Fleet Corporation (Sup.) 202 N. Y. S. 809.

[3] The appellant also urges that the Fleet Corporation, in so far as it acted at all, was acting as a public agent, and as such could not be sued. Such a claim, however, is not tenable. See United States v. Strang, 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368; Sloans Shipyards Corporation v. Emergency Fleet Corporation, 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; Providence Eng. Corp. v. Downey Shipbuilding Corp. (C. C. A.) 294 F. 641; Gould Coupler Co. v. Emergency Fleet Corp. (D. C.) 261 F. 716; Haines v. Lone Star Shipbuilding Co., 266 Pa. 92, 110 A. 788; Eichberg v. Emergency Fleet Corporation, 51 App. D. C. 44, 50, 273 F. 886.

[4] The appellant furthermore contends that the evidence in the case failed to sustain the charge of negligence upon the part of the officers of the vessel. That contention. must be overruled upon the facts appearing in the record; for the officers did not exercise reasonable care for the plaintiff's safety, when they required him to perform the work in question under the circumstances disclosed by the evidence. It is conceded that a ship's officers may be justified under given circumstances in ordering seamen into positions of great personal peril in the performance of their duty; but no such circumstances existed in this case. Neither the safety of the vessel nor the preservation of the cargo required that the oil should be cleaned up while the ship was at sea in such weather, nor was the oil then needed for the operation of the ship. The plaintiff in fact was needlessly exposed to obvious danger of great bodily harm by the imperative command of the ship's officers; this was negligence upon the part of the officers, and the plaintiff's injury was the direct result of it.

[5] It is next contended by the appellant that the plaintiff assumed "the risk of conditions which were plainly observable and appreciated by him," and therefore cannot recover for the resulting injuries. This argument is answered at present by the fact that the doctrine of "assumption of risk" implies at least some measure of freedom of action upon the part of the employee, whereas in this instance the plaintiff was compelled under penalties to obey the order of his officers. The doctrine, therefore, does not apply to the proven facts of the case. Parry v. Cricket (C. C. A.) 263 F. 523; Panama

v. Johnson, 289 F. 967; Eldridge v. Atlas Steamship Co., 134 N. Y. 187, 32 N. E. 66; Shearman & Redfield on Negligence, vol. 1 (6th Ed.) §§ 207, 211a.

Various other questions are presented by the appellant, but we find no error in the record, and accordingly affirm the judgment of the lower court, with costs.