## KOEHLER v. PRESQUE-ISLE TRANSP. CO.

### No. 279.

Circuit Court of Appeals, Second Circuit.

March 24, 1944.

Sanders, Hamilton, Dobmeier, Connelly & McMahon, of Buffalo, N. Y. (Harry D. Sanders and John F. Connelly, both of Buffalo, N. Y., of counsel), for appellant.

Desmond & Drury, of Buffalo, N. Y. (John E. Drury, Jr., of New York City, of counsel), for appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This is an action for injuries suffered while plaintiff was in the employment of defendant as a seaman. The complaint stated that plaintiff elected to maintain the action under the Jones Act, 46 U.S.C.A. § 688. At the trial before a judge and jury, the testimony showed the following: Plaintiff and a fellow-seaman, Todd, were both wheelsmen employed on the S. S. "Angeline," owned by defendant, and engaged in traffic on the Great Lakes. There was testimony that on October 20, 1940, when the ship was docked at Milwaukee, Wisconsin, Todd had deliberately picked a fight on the dock with another seaman, employed on the ship, whom Todd then "beat up" in the presence of the second mate. There was also testimony as follows: About a month later, on November 21, 1940, when the ship was docked at Buffalo, New York, Todd, who was to succeed plaintiff on watch, came aboard the boat; he yelled at plaintiff, swearing and calling him names; as plaintiff was walking along the passageway in the crew's quarters towards his room, Todd called him from his (Todd's) room; plaintiff entered and asked what was the matter, and Todd struck him; the third mate, who was in the room with Todd, seized the plaintiff and told him to go ashore "until this blows over"; plaintiff did go ashore and returned in about an hour and a half; when he returned, Todd was waiting for him at the ladder and struck him almost knocking him off the ladder; plaintiff jumped on the deck and Todd then immediately attacked him again, knocking him down and kicking him twice in the chest, once in the face and in his leg and groin; plaintiff tried to get up but could not defend himself. Plaintiff had told the second mate, who was then in charge of the ship, of the first encounter and that Todd had attacked him; there was evidence from which the jury could properly infer that the second mate had seen Todd sitting by the ladder and knew that Todd was waiting for the plaintiff to return. Some of this testimony was contradicted by witnesses whose testimony was such that if the jury had believed it they could not properly have brought in a verdict for plaintiff.

At the close of plaintiff's case, the defendant moved to dismiss the complaint. This motion was denied. At the close of all the testimony, defendant moved for the direction of a verdict in its favor, on the ground that the plaintiff failed to show the defendant knew or had notice that Todd was of a vicious or belligerent character, that the altercation between the plaintiff and Todd was a purely personal affair, and on the ground that Todd was not acting within the scope of his authority or in the interest of the defendant. Upon this motion the Court reserved decision. The Court submitted the case to the jury for a general verdict and also submitted to it the following three special questions: "1. Was Todd of a vicious and belligerent nature and likely to inflict bodily harm upon other members of the crew? 2. If so, was that fact known to the officers of the ship, or should it have been known to them in the exercise of ordinary diligence? 3. Was plaintiff's physical condition as revealed by the hospital record at Cleveland, the natural result of the injuries he received in the fight on the ship?"

The jury answered the three questions in the affirmative and returned a general verdict in favor of the plaintiff in the amount of $3,000. The court then said that it would grant defendant's motion for a directed verdict, but, upon subsequent reconsideration, decided to let the verdict stand and entered judgment accordingly. From that judgment defendant appeals.

█ The jury could properly make inferences from the evidence sufficiently supporting its general verdict and its answers to the special questions. Accordingly, the judgment must stand. An employer under the Jones Act is liable for "negligence." Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082, and Alpha S. S. Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, teach us that "negligence," as used in that statute, must be given a liberal interpretation. We think that it includes any knowing or careless breach of any obligation which the employer owes to the seamen. Among those obligations is that of seeing to the safety of the crew. And there is no such safety if one of the crew is a person having the character of Todd. Consequently, the defendant is liable here because the ship's officers knew, or with ordinary diligence, should have known, what Todd was like. In such circumstances, it is not material that Todd, when he assaulted plaintiff, was not acting in the course of his employment or in the interest of defendant. Cf. The Rolph,

492

9 Cir., 299 F. 52, certiorari denied 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468.[1] In so far as Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299, and Atlantic Coast Line R. Co. v. Southwell, 275 U.S. 64, 48 S.Ct. 25, 72 L.Ed. 157, indicate a contrary conclusion as to an ordinary employee, they are not in point since the obligation of a shipowner to his seamen is substantially greater than that of an ordinary employer to his employees.[2]

Affirmed.

---

[1] In Cain v. Alpha S. S. Corp., 2 Cir., 35 F.2d 717, 720, affirmed on other grounds in Alpha S. S. Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, in passing, we cited The Rolph, supra, with apparent approval. In Bonsalem v. Byron S. S. Co., 2 Cir., 50 F.2d 114, 115, we did so again, but held it inapplicable for reasons there noted. Cf. Pacific Steamship Co. v. Peterson, 278 U.S. 130, 137, 49 S.Ct. 75, 73 L.Ed. 220.

In Cain v. Alpha S. S. Corp., supra, Yukes v. Globe S. S. Corp., 6 Cir., 107 F.2d 888, Nelson v. American-West-African Line, 2 Cir., 86 F.2d 730 and Lykes Bros. S. S. Co. v. Grubaugh, 5 Cir., 128 F.2d 387, there was no proof that the marauding employee was known or reasonably

should have been known to be unusually belligerent.

[2] "We have often had occasion to emphasize the conditions of the seaman's employment * * * which have been deemed to make him a ward of the admiralty and to place large responsibility for his safety on the owner. He is subject to the rigorous discipline of the sea, and all the conditions of his service constrain him to accept, without critical examination and without protest, working conditions and appliances as commanded by his superior officers." Mahnich v. Southern S. S. Co., 64 S.Ct. 455, 459.

For a discussion of the history and the policy behind such rulings, see Hume v. Moore-McCormack Lines, 2 Cir., 121 F.2d 336.