### HONG v. UNITED STATES.

District Court, S. D. New York.

Nov. 16, 1944.

William L. Standard, of New York City (Jacquin Frank, of New York City, of counsel), for libelant.

John F. X. McGohey, U. S. Atty., of New York City (Corydon B. Dunham, of New York City, of counsel), for respondent.

HULBERT, District Judge.

This libel is predicated upon personal injuries inflicted upon one member of the crew by another.

Two claims are set forth in the libel (a) for indemnity and (b) for maintenance and cure.

On the question of liability the case of Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, seems squarely in point.

The real difficulty in disposing of the issues has been to determine what damages the libelant sustained as the result of four assaults made upon him while in the service of the ship as distinguished from an assault after the voyage terminated.

After the commencement of this suit the court granted a preference; later upon re-

quest of the respondent for an adjournment, it imposed as a condition, that the libelant should be paid the sum of $82.50 per month from June 16th, 1944, until the trial, and he has received up to and including Nov. 15th, 1944, the sum of $412.50.

1. At all of the times alleged in the libel the United States of America, through its Governmental Agency, the War Shipping Administration, owned and operated a certain merchant vessel of American registry, known as the S/S Thomas Lynch, which at the time of the filing of the libel was, or would be during the pendency of this suit, within the jurisdiction of this court.

2. The S/S Lynch sailed from New York about April 1, 1943, arrived at Oran, Africa, about April 24th or 25th, 1943, sailing from there about 18 days later and arrived in New York on May 28, 1943.

3. Libelant, a native of Korea, about 60 years of age, who had been in the United States for 40 years, employed chiefly as a cook or chef in private homes, signed on The Lynch on March 31st as Chief Cook; a short time before he had become a member of the National Maritime Union.

4. Ricardo Franco (also known as Frankel) a Porto Rican, and a member of the National Maritime Union, signed on The Lynch on March 23rd, as an ordinary seaman.

5. Clyde Allen Taylor, now a Boatswain in the U. S. Maritime Service, was a member of the crew of The Lynch, and as a member of the National Maritime Union, was its deck delegate on said vessel.

6. Taylor had previously served as a member of the crew of the S/S Zarembo and Franco had been a member of that crew at the same time. After Franco came aboard The Lynch he reported to Taylor, who immediately informed the Chief Mate that Franco while a member of the crew of the Zarembo had been in an encounter with her Chief Cook regarding his food and Taylor had seen them "battling all over the deck"; also that Franco had cut one of the Kroo boys (members of a native tribe who work cargoes on the West African Coast) for which he was fined $50, and suggested that another seaman be secured in place of Franco; also a carpenter, as the crew was then one man short. The Chief Mate stated he would see about it but nothing was done. In his testimony the Master explained that as seamen were needed the Union was notified and they sent them men in the order in which their names appeared upon a waiting list.

7. Franco came into the galley on April 14th and again on April 16th to cook his own rice; the Chief Cook ordered him out in each instance and an assault followed; no one else saw or testified to either of these assaults except the libelant.

8. On April 24th, while The Lynch was approaching, or had arrived at Oran, the libelant was twice assaulted by Franco on two different occasions. The Chief Steward and the Chief Cook were both in the Master's quarters when he returned from shore. The Master sent for Franco, who refused to appear until he was threatened with disciplinary confinement. The Master testified that the libelant claimed on that occasion, Franco had grabbed him around the neck, but the Master could see no marks; nevertheless he admitted that the Chief Steward had stated "that Franko (who weighed about 200 pounds) had choked the cook (who weighed about 135 pounds)". The log entry reads: "choking and wrenching his left arm" according to report from Chief Steward. The Master also admitted that he had learned later that Franco had had trouble with another seaman on the outward voyage. The Master had Franco taken off The Lynch at Oran and delivered to the United States Military authorities in that port. At a hearing Franco was fined $75 which, after several days confinement, the Master directed the purser to advance against Franco's wages and he was released and returned to the ship. On the homeward voyage the Second Mate reported to the Master that Franco had threatened him from the crow's nest about a week or ten days after it happened; in fact the Master heard it from someone else and upon questioning the Mate, he confirmed it. Of course that does not bear upon the question of notice of the dangerous character of Franco, but it does confirm my conviction there was a relaxation of discipline in requiring subordinates to report to the Officers commanding the ship.

9. It also appeared from the testimony of Taylor that on the outward voyage Franco had "had a run in with Bo's'n Jack Allen in the paint locker in the bow;" Franco refused to do work the Bo's'n had assigned to him and made a threat to kill someone. This does not appear to have come to the attention of the Master. Franco also had some difficulty with a fellow

Porto Rican seaman called Luis, whom he struck in the eye. The Master heard of this "indirectly."

10. The evidence satisfies the court that the Master knew, or should have known by the exercise of due diligence, that Franco was a person of dangerous character and should have at least taken effective means of protecting other members of the crew.

11. On the first cause of action the libelant is awarded the sum of $2,000, and on the second cause of action, the sum of $1,031.25.

12. As of November 15, 1944, the libelant is able to resume a gainful occupation.

(A) This court has jurisdiction of the parties and of the subject matter of this suit.

(B) The libelant is entitled to a judgment in the sum of $3,031.25, with costs and disbursements to be taxed by the clerk of this court.