## COMBS v. UNITED STATES.
### No. 134–344.

District Court, S. D. New York.
April 12, 1947.

Simone N. Gazan, of New York City, for libelant.

Duncan & Mount, of New York City (Frank A. Bull and Daniel Huttenbrauck, both of New York City, of counsel) for respondent.

COXE, District Judge.

This is a suit in admiralty for damages for personal injuries alleged to have been sustained by the libelant on June 24, 1944, while employed as a deck maintenance man on the S.S. "Charles M. Schwab", a merchant vessel owned and operated by the United States. The vessel was at the time proceeding through the Mediterranean bound for Egyptian ports, and the libelant received his injuries in a fall while helping to rig an awning over the barrage balloon platform on the after part of the vessel. The libelant was a minor when the suit was commenced, but he has since become of age.

Shortly before the accident a number of the crew suggested to Kerr, the boatswain, that he go to the Captain and request permission to rig an awning over the barrage balloon platform to shield the men from the sun and provide a cool place for them to sleep when off watch. Kerr saw the Captain on Saturday morning, June 24th, and made his request, which the Captain readily granted on the understanding that the men doing the work would be volunteers and no overtime compensation would be paid.

The barrage balloon platform over which the awning was to be hung was a heavily built, level, rectangular platform erected on top of some cased trucks, which were being carried on deck and covered the whole area of No. 5 hatch. This platform was about 30 by 40 feet in size, located about 18 feet above the dock, and reached by a catwalk. Completely surrounding the platform, and from 3 to 4 feet above the floor,

was a horizontal wooden rail made of 2 by 4 lumber and supported at intervals by 2 by 4 uprights nailed at the bottom to the sides of the cased trucks and firmly braced.

A large tarpaulin, which was part of the barrage balloon equipment, was to be used for the awning, and the Captain gave the boatswain specific instructions how it should be hung over a line running from the after mast to the flagstaff. The rigging of the awning commenced at about 10:15 a. m. following the boatswain's talk with the Captain, and was in charge of the boatswain. At first only a few of the crew participated in the work, and these admittedly were volunteers. The libelant was not, however, one of the original group.

The libelant came on duty at 8:00 a. m. his regular hours for the day being from 8:00 a. m. to 12:00 M, and he was for some time thereafter "up forward straightening up, clearing up tools". Soon after 10:15 a. m. the boatswain went to the place where the libelant was working and directed him to "Come back aft. We got a job to do back there." The libelant thereupon proceeded aft and when he reached No. 5 hatch he was ordered by the boatswain "To get up on the rail and pull the tarpaulin out over the rope, straighten it out". The libelant then went up on the platform, stepped on to the after rail, and while facing aft caught hold of the edges of the tarpaulin with both hands and started to pull in order to smooth out the wrinkles. The libelant testified that when he was thus engaged the vessel rolled slightly, the rail on which he was standing turned as the vessel rolled, and he was thrown off balance and fell to the deck below, a distance of over 20 feet. The libelant also said that the line over which the tarpaulin was hung was beyond his reach, and that he was unable to maintain his hold on the tarpaulin.

The libelant, in his fall, sustained a severe fracture of the medial and lateral malleolus of his left ankle; he was first treated by a surgeon from one of the other vessels in the convoy, and later, when the "Schwab" reached Cairo on June 28, 1944, he was taken to an army hospital and his left leg put in a cast. He remained at the Cairo hospital until September 11, 1944, when he was flown to Miami and placed in the Jackson Memorial Hospital, where he stayed until September 27, 1944. He was then transferred to the Baltimore Marine Hospital, where he was intermittently a patient during various periods until July 16, 1946, when he was finally discharged. Despite constant medical and surgical attention, he developed an osteomyelitis which refused to respond to treatment, and on June 26, 1946, two-thirds of his left leg below the knee was amputated. It was the medical testimony that the amputation was excellently performed and that he would be able to wear an artificial limb and have full use of his knee "for one who does have an amputation".

 First, as to the liability. The contention of the respondent that the libelant was a volunteer finds no support in the evidence; both the boatswain and libelant testified that the libelant was taken from his regular work in the forward part of the vessel, and did not volunteer. When the libelant came aft he was ordered by the boatswain "To get up on the rail and pull the tarpaulin out over the rope, straighten it out". This was an order from a superior officer which the libelant was bound to obey. Darlington v. National Bulk Carriers, 2 Cir., 157 F.2d 817. And it was an "inherently dangerous" order under the circumstances. Hanson v. Luckenbach SS. Co., 2 Cir., 65 F.2d 457. The rail was never intended as a place to stand, and it was negligence for the boatswain to order the libelant to use such a support in rigging the awning. Whether the vessel rolled slightly and the rail turned, as testified by the libelant, is of no importance, for even without a finding in those respects the rail was still an unsafe place to work. The libelant's testimony that the line over which the tarpaulin was hung was beyond his reach is uncontradicted, and I find as a fact that this line was beyond the libelant's reach as he stood on the rail. I hold, therefore, that the libelant's injury resulted from the negligence of the respondent, and that the libelant was himself free from contributory negligence.

 Second, as to the damages. The libelant was born on May 27, 1925, and was

therefore two months short of 22 years of age at the time of the trial on March 4, 1947. His base pay was $100 a month, plus wartime bonuses and overtime compensation. He was paid his wages in full to the end of the voyage on October 28, 1944. He incurred no medical expense, and his maintenance was paid in full to December 1, 1946. With this preliminary statement, I calculate his damages as follows:

(a) Lost wages from October 28, 1944 to March 4, 1947, $ 4,000. This figure includes base pay of $2,800 at $100 a month for 28 months, together with $1,200 for wartime bonuses and overtime compensation.

(b) Maintenance from December 1, 1946 to March 4, 1947, $ 225.

(c) Past and future pain, suffering and humiliation, $ 5,000.

(d) Permanent injuries, $23,500. The libelant has suffered the loss of two-thirds of his left leg below the knee, and obviously is incapacitated for work as a seaman. He testified that it was his purpose to attend a vocational school to fit himself for work as a radio repair man. The record is barren of evidence showing the libelant's actual earnings prior to the accident, and these may be estimated at $2,500 a year. He has a life expectancy at 22 years of age of about 41 years. I think he has suffered a 40% loss of earning power, which on the basis of estimated annual earnings of $2,500 would result in an annual loss of $1,000. This loss, capitalized at 3% over a period of 41 years, has a present value of approximately $23,500.

The total of the foregoing items amounts to $32,725.

There may be a decree for the libelant for $32,725, with costs.