### THE ROBERT JORDAN.

### SMITH v. UNITED STATES et al.
### No. 7017.

District Court, E. D. Virginia.
May 31, 1947.

R. Arthur Jett, of Norfolk, Va., for complainant.

Hughes, Little & Seawell, of Norfolk, Va., for respondents.

HUTCHESON, District Judge.

On February 8, 1944, the libellant joined the steamship "Robert Jordan", but served under a verbal agreement until February 16, 1944, when he signed shipping articles. On February 19 he was given permission to go ashore to his home in Norfolk for some personal effects. The vessel was docked from the date of libellant's employment until the 19th. The libellant proceeded to his home and from there went to a friend's house in the outer limits of the city. He spent the night with his friend and left early the next morning to return to his ship which was due to sail, and in departing turned his ankle in the driveway of his friend's house. Libellant returned home and later went to the Norfolk Marine Hospital, where an examination disclosed that he had suffered a broken ankle. The ship departed without him on February 20, 1944, and is alleged to have terminated its voyage on or about July 3, 1944. On this last mentioned date libellant was declared fit for duty by the hospital physician.

Libellant brought this action to recover wages from February 8, 1944, to July 3, 1944.

Proctor for the libellant cites the case of Aguilar v. Standard Oil Company, April, 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1007, and the companion case decided concurrently of Waterman S. S. Corp. v. Jones, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. In the Aguilar case the libellant seaman was given shore leave in Philadelphia and as he was proceeding through the pier to go to the streets, the lights were extinguished. In the ensuing darkness libellant fell into an open ditch and incurred injuries which prevented him from resuming his usual duties. He then brought an action for maintenance and cure and wages. The Court states the facts in the companion Waterman case as follows (318 U.S. at page 725, 63 S.Ct. at page 931, 87 L.Ed 1107): "The stipulation of facts in No. 454 discloses that on April 18, 1938, the defendant's vessel, the Steamship E. M. Clark, was lying docked at the premises of the Mexican Petroleum Company, in Carteret, New Jersey, which defendant neither owned, operated nor controlled. Petitioner,

a member of the crew, obtained permission from the master and went ashore on his own personal business. In order to reach the vessel on returning from shore leave, he had to pass through the premises of the Mexican Petroleum Company. After he had gone through the entrance gate and while he was walking on the roadway of those premises about a half mile from the ship, he was struck and injured by a motor vehicle which was neither owned, operated nor controlled by the defendant. Petitioner brought this action to recover $10,000, the expense of his maintenance and cure for the injuries so incurred."

The Supreme Court, in its opinion, analyzes the nature of sea duty, observing the servitude one is subjected to and the hardship and confinement of serving aboard a ship, and indicated that it considered shore leave a part of sea duty. In 318 U.S. at page 734, 63 S.Ct. at page 935, 87 L.Ed. 1107, Justice Rutledge states: "In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion."

The opinion reviews the line of decisions defining the liability of shipowners to crew members. These decisions indicate the tendency of the courts to broaden the owner's liability. But the Supreme Court narrows its holding to the facts presented by the two cases then before it. In 318 U.S. at page 737, 63 S.Ct. at page 937, 87 L.Ed. 1107, the actual holding of the Court is set out: "We can see no significant difference, therefore, between imposing the liability for injuries received in boarding or quitting the ship and enforcing it for injuries incurred on the dock or other premises which must be traversed in going from the vessel to the public streets or returning to it from them. That much at least is within the liability. How far it extends beyond that point we need not now determine."

Several cases have been decided since the Aguilar case and reference to them is helpful in considering the scope of the Aguilar holding.

The case of Siclana v. United States, D.C.S.D.N.Y., March 1944, 56 F.Supp. 442, restricted the influence of the Aguilar holding to injuries suffered in or near the dock approaches to the ship. The Court, in ruling on a motion to dismiss respondent's exceptions to the libel, in which the libellant alleged that in the course of his duties he was returning to his vessel when he was attacked by certain men and without any fault on his part sustained severe and personal injuries, cited the case of Aguilar v. Standard Oil Company, supra. In 56 F. Supp. on page 443, the Court dismissed libellant's motion to dismiss the exceptions on the grounds that: "In the case at bar the locality of the attack is not identified. Its proximity to the place of employment (the ship) is not disclosed and it may have been so far remote that his employer may not have been under any duty of responsibility whatever."

A broader view of the effect of the Aguilar case is afforded by the opinion in Dasher v. United States, D.C.S.D.N.Y., January, 1945, 59 F.Supp. 742. Dasher, a seaman, sustained injuries through no fault of his while off duty and ashore at a Mediterranean port. The Court permitted recovery under the Aguilar case and held that though the libellant was on shore leave, he was engaged in the service of his ship at the time he sustained his injury.

The latest case found citing the Aguilar opinion is that of Kyriakos v. Goulandris et al., 2 Cir., August, 1945, 151 F.2d 132. For the purpose of considering the case at bar the following facts are material. The libellant signed articles in New York for a voyage from Newport News to England. During the course of the voyage the libellant was drawn into certain quarrels with a fellow seaman, which fellow seaman was described as a "bad character" and was addicted to the use of hasheesh. He participated in several quarrels with other seamen and had been reported to the Captain for his conduct. The Captain appears to have tacitly consented to the crew member's misbehavior. During the course of the voyage the vessel put in at Fernandina and in the course of libellant's duty he had to once more discipline his fellow crew member. Subsequent to this he was returning to his ship from shore leave, when he was attacked by this crew member. Libel-

lant brought an action to recover wages, maintenance and cure. The Circuit Court of Appeals, in affirming the opinion of the District Court allowing recovery as to this phase of the case, states in 151 F.2d at page 135: "If the officers choose to continue to employ a man who is known or should be known by them to be a source of peril to those who sail with him, when measures which might reasonably be expected to prevent resulting injury are not or cannot be taken, a resulting injury to a member of the crew is one for which the person injured may recover under the Jones Act, 46 U.S.C.A. § 688. Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490."

And continuing in 151 F.2d on page 138: "But we do not rest our decision on this point on this ground alone. The Supreme Court has said, Aguilar v. Standard Oil Co., 318 U.S. 724, 737, 63 S.Ct. 930, 937, 87 L.Ed. 1107, that the liability of a shipowner for maintenance and cure extends to 'injuries incurred on the dock or other premises which must be traversed in going from the vessel to the public streets or returning to it from them,' but added: 'How far it extends beyond that point we need not now determine.' But the reasoning and intimations of the opinion indicate a liability for maintenance and cure in the case of injuries received while the seaman is on shore leave, that are not due to any misconduct on his part. We think it follows that the award to the libellant for maintenance, cure and wages to the end of the voyage was proper."

Despite the apparent intention of the Supreme Court in the Aguilar case to broaden the liability of shipowners to cover injuries incurred while a crewman is on shore leave, the Court pointed out that its actual holding was limited to the facts then before the Court. Those facts are far removed from the facts of the case at bar where the libellant is ashore in his own home town for the purpose of procuring belongings for a contemplated voyage. While ashore for that general purpose he visits a friend some seven miles away from his residence and an even greater distance from his ship. The visit bore no relation to his declared purpose of going to his home to obtain his belongings. It was in no way incident to such trip. It was not a visit or call made on the way between the ship and his home. To permit recovery under this state of facts would appear to make the shipowner an insurer of his crew during the term of their shipping articles provided they were not guilty of misconduct.

It is the conclusion of the Court that recovery should be denied and the libel dismissed, except as to such wages, overtime and lodging, if any, which may be due for the period previous to the injuries sustained by libellant.

### Findings of Fact

In the above entitled cause the Court finds the following facts to be established by the evidence:

1. Under the verbal arrangement effected February 8, 1944, and under articles signed February 16, 1944, the above entitled libellant became a member of the crew of the respondent's steamship "Robert Jordan," at Norfolk, Virginia.

2. The vessel left Norfolk and proceeded to Newport News, Virginia, and was moored at a dock at the last named place at the time the libellant received the injuries hereinafter mentioned. On February 19 libellant was given permission to go ashore to his home in Norfolk for some personal effects, preparatory to the impending departure of the vessel on a voyage. During the time intervening between signing articles and receiving the injuries here mentioned libellant had not been away from Norfolk on a voyage except to accompany the vessel across Hampton Roads to Newport News. He had not been confined on board ship so as to be in need of recreation. He was not, nor had he been, in a foreign port but upon the contrary had not left Hampton Roads since signing articles for the voyage.

3. Libellant proceeded to his home; and from there he proceeded to the home of a friend in the outer limits of the City, where he spent the night. The home of the friend was some seven miles from the residence of the libellant, and an even greater distance from the ship.

While in the act of departing from the home of the friend in the early morning after spending the night, the libellant was the victim of an accident which resulted

278

in a broken ankle, for which he had to be hospitalized.

4. While libellant was still confined in the hospital with his injury, the ship departed without him on February 20, 1944. On July 3, 1944, the libellant was declared by the hospital physicians to be fit for duty.

5. The libel filed in this cause included a claim for wages from February 8, 1944, to July, 3, 1944; but after the filing of the libel the libellant was paid his earned wages up to the time of the departure of the ship on her voyage.

### Conclusions of Law

The Court announces the following conclusions of law in this cause:

1. Libellant is not entitled to recover in this cause, and the libel should be dismissed.