## JENSEN v. UNITED STATES WAR SHIPPING ADMINISTRATION.
### No. 247 of 1946.

United States District Court
E. D. Pennsylvania.
Oct. 7, 1949.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a suit in admiralty by a seaman to recover damages for personal injury, and also cure and maintenance.

On October 14, 1945, the S. S. William Phips was anchored in Luzon Bay, P. I., a mile or more from shore. Jensen, an A. B., together with about 30 of the crew had been on shore leave and, about 11 o'clock P.M., were picked up by the ship's launch in charge of one of the officers. On the way to the vessel Bennett, the ship's carpenter, and Enchura, an oiler, who were sitting opposite one another, got into an angry scuffle in which Bennett, a big man, 6 feet, 2 inches, drunk and carrying a

whisky bottle, was the aggressor. Some of the men in the boat stopped the fight. Bennett tried to renew it and one of the officers told him to "wait till they got back on the ship." Some one, whether an officer or one of the crew does not appear, said "When you get aboard the ship then you can have it out" and Enchura (who was physically a match for Bennett) said "That is all right with me."

When the launch got alongside the Jacob's ladder the officer went up first. Enchura was next and on reaching the deck went over to No. 4 hatch where he waited for Bennett. There were several officers on the boat deck above and one at the door of a passageway on the main deck. The floodlights were on (as was usual when a boat came back at night) and the hatch cover made a suitable ring. It was generally understood that there was going to be a fight and as the men came on the deck from the launch they stood about waiting to see it.

It took about ten minutes for all the men to get to the deck. Bennett was the next to the last man up the ladder, Jensen following immediately after him. As Bennett was getting over the rail, Jensen saw him reach back, draw a knife from his hip pocket and conceal it under a raincoat which he had over his right arm. Enchura was sitting on the hatch cover about ten feet away. Bennett dropped the raincoat and advanced toward Enchura with the knife in his hand but before he reached him Jensen made a lunge for him in an attempt to disarm him. Bennett turned and slashed at Jensen, inflicting a deep cut across the palm of his right hand. Other members of the crew disarmed Bennett, and Jensen went immediately to the master.

The master administered first aid and sewed together the outer edges of the wound but did not take Jensen to the army hospital ashore until the following morning. The army doctor at the hospital examined the hand, diagnosed the wound as a lacerated tendon but did nothing more than change the dressing and tell Jensen to have the hand attended to in about six weeks, after he got back to the States.

As a matter of fact the ship did not leave Luzon for five weeks. The day before it sailed the master again sent Jensen to the hospital. Jensen returned with a note from the army doctor (dated 10-15-45) in part as follows: "lacerated tendon, fifth finger, right hand (old). Advise hospitalization on return to States; not necessary to be done here."

Jensen has suffered permanent impairment of the function of his right hand. The hand may be improved by further surgery.

■ From the medical testimony I draw the following conclusions:

(1) There is no evidence that the master failed to take proper care of Jensen after his injury. His first aid treatment, together with his taking him to the hospital within 12 hours, was a full compliance with his duty in this respect.

(2) The army doctor was negligent in his treatment of Jensen. The uncontradicted expert medical testimony is to the effect that, with a cut of this kind, the severed tendons should be probed for and sutured as soon as possible. In case of a clean wound, as a knife wound usually is, this can be done with an excellent prospect of success within 12 to 24 hours. In case of an infected wound it may have to be delayed as much as three weeks and a secondary repair then effected usually with satisfactory results. The doctor in this case made no effort to perform this necessary operation. His first advice to Jensen was to have it done in six weeks. Then at the end of five weeks, when he knew that the ship was sailing and that it could not be done for another four to six weeks he advised "hospitalization on return to States; not necessary to be done here."

■ However, this being a suit under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., I am satisfied that the negligence of the army doctor cannot constitute a ground of liability on the part of the United States. I do not think that the Act contemplates admiralty jurisdiction in such case. The United States might be liable for the negligence of the doctor in

a suit under the Tort Claims Act, 28 U.S. C.A. §§ 1346, 2671 et seq., but not in this proceeding.

I think, however, that the respondent is liable for the original injury. Among the obligations, the breach of which make an employer liable for "negligence" under the Jones Act, 46 U.S.C.A. § 688, is that of seeing to the safety of the crew. Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490. This means, among other things, doing what is reasonably necessary to protect a seaman from physical violence by another member of the crew.

In the present case the officer in charge of the launch and in command of the men in it unquestionably knew that there was going to be a fight between two of them when they got back to the ship. Not only did he do nothing to prevent it but his statement to "wait till they got back on the ship" taken in connection with the fact that it was also said by some one "When you get aboard the ship then you can have it out" looks almost as though he were promoting it. I do not say that failure on the part of a ship's officer to prevent two members of the crew from settling a dispute by fighting it out would always and under all circumstances amount to negligence, although it might be observed that if two men on shore engaged in a fist fight in a public place any policeman who did not try to stop it would certainly be derelict. What I do hold is that where a ship's officer knows that a drunken sailor, aggressively quarrelsome, in possession of a whisky bottle, and "to all accounts in a bad mood" (Log) is going to fight another member of the crew aboard ship it is his duty to do what he can to prevent the encounter. In the present case the officer from the launch was on deck some eight minutes before Bennett got there and most of the other officers of the ship were also where they could have been apprised of what was going to happen. The probabilities are that they all knew it, although a fact finding on that point is not necessary.

Of course, the actual knifing occurred so quickly that none of the officers could have prevented it and it is not intended to imply that they knowingly countenanced anything of that sort. Still it must be remembered that this was not to be a boxing match or sporting event but a "grudge" fight, with a drunken sailor involved, and it was not beyond the realm of forseeability that a weapon might be used.

The fact that the injured party happened to be a bystander is immaterial. "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Restatement, Torts, Sec. 435.

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." Restatement, Torts, Sec. 449. The breach, of course, was of the duty to protect the personal safety of Jensen. Bennett was the third person whose criminal act caused the harm.

Jensen was not guilty of contributory negligence. "It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person * * * from harm." Restatement, Torts, Sec. 472. Nor can it be called an independent intervening cause.

The foregoing statements of fact and conclusions of law may be taken as the Court's findings and conclusions. In addition I find:

(1) The libellant has suffered damage as the result of his injury in the amount of $5,000.

(2) The libellant is entitled to an award of maintenance for a total of 42 days.

Judgment may be entered for the libellant in accordance with the above.