**KANGADIS v. UNITED STATES.**

United States District Court
S. D. New York.
May 20, 1954.

William L. Standard, New York City, for libelant, by Herman B. Gerringer, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for respondent, by Gray & Wythe, New York City, of counsel.

GODDARD, District Judge.

This is an action under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., against The United States, owner of the S. S. Frederick W. Wood, on which Kangadis was employed as an able-bodied seaman. He seeks damages for an alleged injury, and maintenance and cure.

On September 21, 1945, Kangadis signed on the Frederick W. Wood, a Liberty ship of about 10,000 tons and 450 feet long, for a voyage to the Far East. While at sea, on October 26, 1945, Kangadis was ordered to slosh the stays of the aftermast. The mast had four stays, or steel cables, two on the port and two on the starboard side, running from below the crosstrees downward and outward to the deck. It was customary to slosh them every four or five months with a mixture of tallow and white lead to prevent rust. This was done by a seaman, in a bosun chair hooked up to a block rigged to the mast and shackled to the stay, being lowered as the work progressed from the top along the stay and applying the mixture by hand.

At noon, the boatswain had the chair rigged and hoisted aloft. He ordered Kangadis to climb the mast to a platform some twelve feet below the crosstrees which were forty feet above the deck. The platform was a small rectangle, about fifteen inches by twelve and one-half inches, which supported cargo lights on its underside, and there was one on each side of the mast. Kangadis was ordered by the boatswain to swing himself from the platform into the chair, which was three feet out from the platform and one foot below it. The boatswain demonstrated how it was done, which he did by leaning out and grasping the stay and then swinging his legs into the chair. Kangadis, a man then of forty-five years of age, objected, saying that he could not make it as it was too far for him to jump from the platform into the chair.

Kangadis estimated that the chair was thirty inches long by six inches wide. According to the mate, it was eighteen inches long by six to eight inches wide. It had a line from each corner joined at a ring above it forming the bridle which supported the chair.

The ship's log shows that during the previous night the ship was rolling and pitching in a rough northeasterly sea. At 0800 on the morning of October 26th, the wind was Force 4 but at noon it had moderated to Force 3 and the weather was overcast with a moderate northeasterly sea and swell.

Kangadis, as ordered by the boatswain, climbed up to the platform on the mast and swung into the chair and sloshed the two port stays, while an ordinary seaman lowered him down as he worked. The.

ordinary seaman sloshed the forward starboard stay and Kangadis was then ordered to complete the job by doing the aft starboard stay. He climbed up to the platform, took hold of the stay, and tried to swing into the chair, but one leg missed and he sat straddling the chair. In an effort to get entirely into the chair, he grabbed the stay with his hands and tried to lift his leg into the chair. As he did so, he felt a cracking sensation in his right thumb. It later began to pain and swell, and he subsequently reported to the pharmacist's mate who put it in splints. When the vessel arrived at Okinawa, he was sent to the hospital where X-rays showed a dislocation of the right thumb and a cracked carpal scaphoid bone in the right hand.

Kangadis had been going to sea since 1918. He testified that he had sloshed stays a thousand times and that the usual way to do it was for the seaman to get into the chair on deck and be hoisted aloft by the winch or a man on deck. He said he had never seen it done any other way. Though two of the respondent's expert witnesses testified that it was customary to climb into it aloft, they recognized that a seaman could easily be seated in the bosun chair on deck and be hoisted up. One testified that either way was customary.

To require a seaman to swing himself out from a small platform some thirty feet above the deck on a rolling vessel into a bosun chair, supporting himself by grasping a stay which was periodically coated with a greasy mixture, is to require him to perform a difficult and dangerous act. Kangadis' hands were greasy, too.

■ The employer has an obligation to see to the safety of the crew, and the breach of that obligation is negligence. Koehler v. Presque-Isle Transp. Co., 2 Cir., 1944, 141 F.2d 490, certiorari denied 322 U.S. 764, 64 S.Ct. 1288, 88 L.Ed. 1591. An officer must exercise reasonable care for the seaman's safety. Roberts v. United Fisheries Vessels Co., 1 Cir., 1944, 141 F.2d 288; United States

Shipping Board Emergency Fleet Corp. v. O'Shea, 1925, 55 App.D.C. 300, 5 F.2d 123. Consequently, to require a seaman to do his work in a dangerous manner, when there are other and safe ways to do it is negligent. Reskin v. Minnesota-Atlantic Transit Co., 2 Cir., 1939, 107 F.2d 743; Combs v. United States, D.C., 73 F.Supp. 665; Haddock v. North Atlantic & Gulf S. S. Co., D.C., 81 F.Supp. 421.

■ Under the present circumstances, it was subjecting Kangadis to unnecessary danger to require him to swing himself into the chair while it was aloft. It was to be anticipated that he might not be able to swing from the platform on the mast and land, fully and safely, in the swaying chair, and that he might get into a dangerous position and have to correct it. This he attempted to do, and in doing so he injured his hand. The safer way would have been for him to get into the chair on the deck and be hoisted up to the place where he was to work.

■ I do not find that Kangadis was contributorily negligent and it is well settled that he did not assume the risk in obeying the orders of his superior officers. Darlington v. National Bulk Carriers, Inc., 2 Cir., 1946, 157 F.2d 817; Roberts v. United Fisheries Vessels Co., supra; Reskin v. Minnesota-Atlantic Transit Co., supra; Hanson v. Luckenbach S. S. Co., 2 Cir., 1933, 65 F.2d 457.

Kangadis testified that he had had no previous trouble with his right hand. After treatment at the Okinawa hospital, in November, 1945, he was sent to Guam and thence to the United States. He received treatment at various hospitals, both as an in-patient and an out-patient. While the fracture healed, the dislocation required a fascia graft in early 1946. He was discharged on April 29, 1946, as fit for duty, but in 1947 he required further treatment, as the hand was infected.

■ A doctor called by Kangadis testified that he examined Kangadis at the request of his counsel solely for the purpose of testifying and that Kangadis had

sustained permanent limitation of one-third of the use of his right hand. The respondent's doctor reported that there was some partial disability. However, after the medical treatment, he went back to work in June, 1946 as a seaman, and he has continued to work, making about the same wages as before. He has received wages to the end of the voyage and maintenance and cure, totalling $1,-150. It is agreed that he is entitled to additional maintenance and cure in the amount of $134.

I find that the libelant is entitled to indemnity of $2,000 and the additional amount for maintenance of $134. If further findings of fact and conclusions of law are desired, libelant may submit proposed findings on notice to respondent.